The plaintiff alleged that J. Anderson Smith died intestate on 8 November, 1927, and that on 28 May, 1927, said intestate had on deposit in the defendant bank the sum of $2,425.04, for which a certificate of deposit had been issued. Plaintiff further alleged that on 30 August, 1927, the defendants, B. C. Smith and Roxie Smith, his wife, obtained *Page 35 
the certificate of deposit and had the funds represented by said certificate transferred to their own individual account, and that at the time of such transfer the intestate, J. Anderson Smith, was so weak in body and mind as to be incapable of understanding a business transaction. Plaintiff further alleged that some time prior to his death the deceased, J. Anderson Smith, had loaned to the defendant, B. C. Smith, the sum of $1,200; that said defendant, B. C. Smith, had executed and delivered to J. Anderson Smith a note for said sum and secured same by a mortgage on real estate owned by said defendants, which said mortgage had never been recorded, and that upon the death of J. Anderson Smith the said defendants took possession of all his personal property and wrongfully withheld the same from the plaintiff, administrator.
The defendants, Smith and wife, filed an answer alleging that they had paid the note secured by the mortgage on the land; that J. Anderson Smith, for several years prior to his death, had lived in the home of said defendants, and that said intestate had agreed to pay said defendants for support, and that the transfer of said certificate of deposit was made by the intestate as a payment to the defendants for care and maintenance.
The defendant, Bank of Gibsonville, filed an answer alleging that the transfer and assignment of said funds was valid and legal.
The evidence tended to show that the defendant, B. C. Smith, was the step-son of the intestate, J. Anderson Smith, and that said step-son, after his marriage, lived in the home of the intestate until the death of the mother of said defendant on 11 July, 1922. After the death of defendant's mother his step-father, J. Anderson Smith, lived in the home of B. C. Smith; that while the intestate was 74 years of age and feeble for some time prior to his death, his mental condition was good until a short time before his death.
It appeared that the defendant, B. C. Smith, had been examined before a commissioner appointed by the clerk at the instance of plaintiff on 9 July, 1928. The affidavit filed by the plaintiff to procure the examination alleged that "J. Anderson Smith died intestate, leaving personal property of value and a considerable sum of money, but at the time of his death he resided with the defendants and had been residing with them for several years. . . . That the defendants were familiar with his business and knew the whereabouts of his property and where his money was deposited and where his valuable papers were kept, . . . and that there is money and property either in the hands of defendants or in their possession, or the whereabouts of which is well known to them. . . . That affiant demands the right to examine the defendants before the trial of the above action to the end that he may elicit relevant testimony with reference to the matters and things referred to *Page 36 
herein; . . . that the affiant is informed and believes that the deceased had on deposit in the bank or banks certain moneys belonging to him, and that said defendant, without the authority of deceased, withdrew said funds from said bank or banks, and either has the said funds or has disposed of same without making any account or report to this affiant with respect to the same, but the facts in connection with said matter are peculiarly within the knowledge of the defendants."
Upon the affidavit, an order was duly made to examine said defendant, B. C. Smith, in accordance with C. S., sec. 900 et seq. At the trial, the defendant offered in evidence, in his own behalf, his testimony so taken by the plaintiff. This testimony disclosed that the intestate had endorsed the certificate of deposit in controversy and delivered it to the defendant in payment of support, and that the mortgage indebtedness had been paid by the defendant to J. Anderson Smith and the mortgage burned.
Upon issues submitted the jury found that the deceased, J. Anderson Smith, had assigned to the defendants the certificate of deposit; that he had sufficient mental capacity to know and understand the effect of said act, and that the defendants were not indebted to the plaintiff administrator by virtue of the execution of the mortgage referred to in the evidence.
From judgment upon the verdict plaintiff appealed.
The question of law is this: In a suit brought by an administrator of a deceased person, to recover assets of deceased, alleged to be in the custody of defendant, is the testimony of defendant to a transaction with deceased, taken before a commissioner under the provisions of C. S., 901, at the instance of plaintiff, competent, in behalf of defendant upon the trial of the cause, or should the same have been excluded by reason of the inhibition contained in C. S., 1795?
C. S., sections 900 to 908, not only prescribe the method by which an adverse party may be examined, but they also clearly disclose that testimony taken in accordance with the methods prescribed "may be read by either party on the trial." It is contended, however, that testimony taken under C. S., section 900, et seq., is not competent in cases where such testimony would invade the boundary of C. S., 1795. It must be observed, however, that the wise protection established by C. S., 1795, may be waived. Meroney v. Avery, 64 N.C. 312; Norris v. Stewart, 105 N.C. 455,10 S.E. 912; therefore, when an administrator examines the defendant upon oath as provided by C. S., section 900, he *Page 37 
does so with full knowledge of the fact that the statute makes such evidence competent at the trial and is thus equivalent to a waiver of the provisions of C. S., 1795. The case of Phillips v. Land Co., 174 N.C. 542,94 S.E. 12, while not directly in point because of a fact setting different from the case at bar, tends to establish the competency of such evidence, irrespective of the inhibition of C. S., 1795.
We are of the opinion that the evidence was competent.
There was no objection to the issues submitted by the court, and hence the essential merits of the case have been established by the verdict of the jury.
We find no reversible error, and the judgment, as rendered, is approved.
No error.