GENE C. SMITH, ADMINISTRATOR OF THE ESTATE OF DONALD JOSEPH POURCH v. HARLEY LESTER DEAN, NELLIE CANFIELD AND EUGENE ANDREW CANFIELD

No. 6810SC249

(Filed 16 October 1968)

1. **Automobiles § 45; Evidence § 11— identification of deceased as driver of automobile — amendment to G.S. 8-51**

    The amendment to G.S. 8-51 providing that the statute does not preclude an interested party from testifying in an action against a deceased's estate growing out of an automobile accident that deceased was driving the automobile is not applicable to actions instituted prior to the date of its ratification, June 22, 1967.

2. **Automobiles § 45; Evidence § 11— Dead Man's Statute — occupant's identification of deceased as driver**

    In actions instituted prior to June 22, 1967, G.S. 8-51 prohibits testimony by a surviving occupant in an action against deceased's estate based on driver negligence that deceased was driving the automobile at the time of the accident.

SMITH *v.* DEAN

**3. Evidence § 11— Dead Man's Statute — personal transaction defined**

A personal transaction as used in G.S. 8-51 includes that which is done by one person which affects the rights of another and out of which a cause of action has arisen.

**4. Evidence § 11— waiver of G.S. 8-51**

Under certain circumstances, the personal representative can waive the protection afforded by G.S. 8-51 and thus open the door for testimony of the opposing party or interested survivor as to a personal transaction or communication with the deceased.

**5. Automobiles § 45; Evidence § 11— waiver of G.S. 8-51**

In a wrongful death action growing out of an automobile accident, plaintiff's introduction of testimony that defendant had admitted he was driving the automobile when the accident occurred constitutes a waiver of the protection of G.S. 8-51 as to the transaction of the driving of the automobile and renders competent testimony by defendant that plaintiff's intestate was the driver.

**6. Automobiles § 45; Evidence § 11— waiver of G.S. 8-51 — same transaction**

Where plaintiff's evidence opened the door to testimony by defendant as to the transaction of the driving of the automobile in which both plaintiff's intestate and defendant were riding, the court properly admitted defendant's testimony as to who was driving the automobile in other states during the trip which culminated in the accident in question, the trip being continuous and the driving of the automobile during the entire trip constituting one transaction.

**7. Evidence § 11— waiver of G.S. 8-51 by cross-examination**

In a wrongful death action, plaintiff's cross-examination of defendant as to certain communications with deceased *is held* to constitute a waiver of the protection of G.S. 8-51 as to the matters inquired about, rendering competent defendant's testimony on redirect examination as to such communications.

**8. Evidence § 25— photographs**

As a general rule, photographs are competent to be used for the purpose of illustrating anything it is competent for the witness to describe in words.

**9. Evidence § 25— establishing accuracy of photograph**

The accuracy of a photograph as a true representation of the scene, object or person it purports to portray must be shown by extrinsic evidence, but this need not be established by the photographer, it being sufficient if it is established by any witness familiar with the scene, object or person portrayed.

**10. Evidence § 25— admissions of photographs — discretion of court**

Whether a photograph is sufficiently verified and correct to justify its admission for illustrative purposes is for determination by the trial judge in the exercise of his judicial discretion, and no abuse of that discretion

is shown in the court's exclusion of an exhibit designated a photograph where the evidence as to what the exhibit shows is conflicting and the exhibit filed with the Court of Appeals reveals that it is a faded reproduction of a photograph made by a copying machine.

**11. Trial § 42— verdict — sufficiency of evidence**

A finding by the jury that the party having the burden of proof on an issue failed to carry that burden need not be supported by the evidence, a lack of evidence being sufficient to support such a verdict.

**12. Trial § 42— inconsistent verdict**

Where plaintiff alleged in a wrongful death action that the death of his intestate resulted from the negligence of defendant and another, and defendant counterclaimed for personal injuries allegedly caused by the negligence of plaintiff's intestate, the allegations and evidence conflicting as to whether plaintiff's intestate or defendant was driving the automobile in which they rode together, a finding by the jury that the death of plaintiff's intestate was not proximately caused by negligence of defendant is not inconsistent with the jury's further finding that defendant's injuries were not proximately caused by negligence of plaintiff's intestate.

**13. Trial § 32— purpose of charge**

The chief purpose of the charge is to aid the jurors to understand the case clearly and to arrive at a proper verdict.

**14. Trial § 33— G.S. 1-180**

G.S. 1-180 requires the judge to charge the law on the substantial features of the case arising on the evidence and to give equal stress to the contentions of the parties.

APPEAL by plaintiff and defendant Harley Lester Dean from *Bone, E.J.*, March 1968 Civil Assigned Session of Superior Court of WAKE County.

Plaintiff seeks to recover for the death of his intestate, alleged to have been proximately caused by the actionable negligence of the defendants Harley Lester Dean and Eugene Andrew Canfield.

Defendant Harley Lester Dean answered denying negligence and as a further answer and defense, asserted that if it should be found he was negligent, the plaintiff's intestate, Donald Joseph Pourch, was contributorily negligent. Defendant Dean filed a counterclaim against plaintiff in which he seeks to recover for personal injuries alleged to have been proximately caused by the actionable negligence of plaintiff's intestate.

In the second paragraph of his charge to the jury, Judge Bone said, "No issue is being submitted to you as to the liability of the defendants, Canfield, and we're not adjudicating the matters alleged in the pleadings in regard to them."

Counsel for plaintiff and defendant agreed upon the issues which were submitted to and answered by the jury as follows:

"1.  Was the plaintiff's intestate killed as a result of the negligence of the defendant Harley Lester Dean, as alleged in the complaint?

ANSWER:  No.

2.  What amount of damages, if any, is the plaintiff entitled to recover for the death of the decedent?

ANSWER:  .....................

3.  Was the defendant Harley Lester Dean injured through the negligence of the plaintiff's intestate, as alleged in the Answer and Counterclaim?

ANSWER:  No.

4.  What amount of damages, if any, is the defendant entitled to recover of the plaintiff Administrator?

ANSWER:  ....................."

From the judgment rendered on the verdict of the jury, both plaintiff and defendant appeal to the Court of Appeals.

*Yarborough, Blanchard, Tucker & Yarborough by Charles F. Blanchard and Newsom, Graham, Strayhorn & Hedrick by E. C. Bryson, Jr., for plaintiff.*

*Joseph C. Olschner and Dupree, Weaver, Horton, Cockman & Alvis by F. T. Dupree, Jr., for defendant Harley Lester Dean.*

MALLARD, C.J.

Plaintiff offered evidence which, in substance, tended to show that on 22 November 1965 he was the duly qualified and acting administrator of the estate of Donald Joseph Pourch who died 22 November 1965 shortly after seven o'clock A.M. from a brain injury received in the collision hereinafter referred to. On that same date at about two o'clock A.M., the defendant Dean was operating an Oldsmobile automobile at about sixty miles per hour, traveling South on highway #301. Plaintiff's intestate was a passenger therein when the front end of the Oldsmobile collided with the rear end of a stopped bus on the highway. The collision occurred about three miles South of Whitakers on Highway #301, which highway had a black asphalt surface and was about twenty-two feet wide. The road there was level and straight. The bus had stopped because of an accident

SMITH v. DEAN

on the highway which had occurred before it arrived. The lights on the rear of the bus were burning at the time of the collision. It was raining and the road was wet.

A constable was at the scene with a six-volt battery light in his hand, waving it in an effort to stop the Oldsmobile before it collided with the bus, but the Oldsmobile did not stop and struck the rear of the bus. After hitting the bus, the Oldsmobile collided with a Plymouth which was traveling behind it. All three of the vehicles involved in this collision had been heading South. Plaintiff's intestate was injured in the collision.

Defendant offered evidence which, in substance, tended to show that plaintiff's intestate Pourch was driving the Oldsmobile at the time of the collision. He, Dean, was a member of the Marine Corps and stationed at Camp Lejeune. On the weekend of 19 November 1965, he went to New Jersey, and his car became disabled. He did not know Donald Joseph Pourch prior to the afternoon of 21 November 1965. He met Pourch in New York City at the Port Authority Terminal Building, a place where service personnel could go to obtain rides back to their respective bases. Pourch was driving the Oldsmobile and Dean rode in the front seat with him on their way to Camp Lejeune. There were two persons in the back of the car, a person named Lopez and one named Walsh. Defendant Dean received personal injuries in the collision.

### PLAINTIFF'S APPEAL

Plaintiff asserts that there are three questions involved in his appeal, as follows:

1. Did the trial court commit error in permitting the defendant Dean to testify about transactions between the defendant and the plaintiff's intestate?

2. Did the trial court commit error in excluding plaintiff's exhibit three showing the vehicle involved in the collision in question?

3. Was the verdict inconsistent and contradictory?

[1] G.S. 8-51, relating to the competency of witnesses and excluding a party to a transaction when the other party is dead, was amended by Chapter 896 of the 1967 Session Laws by adding the following sentence to the end thereof:

"Nothing in this section shall preclude testimony as to the identity of the deceased operator of a motor vehicle in any case brought against the deceased's estate arising out of the operation

of a motor vehicle in which the deceased is alleged to have been the operator or one of the operators involved."

This amendment, which does not apply to pending litigation, was effective upon ratification and was ratified 22 June 1967. This case was instituted on 14 March 1966. Therefore, the statute prior to the amendment is applicable here.

**[2]** "A party interested in the event of an action may not testify in his own behalf as to a transaction or communication with an adverse party who . . . dies prior to the trial when such testimony is against the personal representative of the deceased . . . .

A personal transaction or communication within the purview of G.S. 8-51 is anything done or said between the witness and the deceased person . . . tending to establish the claim being asserted against the personal representative of the deceased person. . . . Thus, testimony as to the manner in which the decedent was driving the car is incompetent to establish his negligence, as is testimony that it was the decedent who was driving the car at the time of the accident." 3 Strong, N. C. Index 2d, Evidence, § 11.

**[3]** Although the term "personal transaction" has not been specifically defined or given any very definite meaning by our Supreme Court, we think that a personal transaction as used in the statute includes that which is done by one person which affects the rights of another, and out of which a cause of action has arisen. Jones, Evidence 2d, § 785 (1908); *Davidson v. Bardin,* 139 N.C. 1, 51 S.E. 779.

**[2]** In the case of *Carswell v. Greene,* 253 N.C. 266, 116 S.E. 2d 801, Justice Higgins, speaking for the Court, said:

"The decisions of this Court have gone a long way in excluding evidence of a surviving passenger in his action against the estate of the deceased driver based on driver negligence. Our cases, however, have never gone so far as to exclude the evidence of a survivor as to what he saw with respect to the operation of a separate vehicle with which he had a collision. A party may testify to substantive facts about which he has independent knowledge not acquired in a communication from nor a transaction with the deceased. *Hardison v. Gregory, supra; Sutton v. Wells,* 175 N.C. 1, 94 S.E. 688; *McCall v. Wilson,* 101 N.C. 598, 8 S.E. 225.

The law that an interested survivor to a personal transaction

or communication cannot testify with respect thereto against the dead man's estate is intended as a shield to protect against fraudulent and unfounded claims. It is not intended as a sword with which the estate may attack the survivor."

[4]   Under certain circumstances, the personal representative can waive the protection afforded by the statute, and when this is done, it is frequently referred to as "opening the door" for the testimony of the opposing party or interested survivor. Stansbury, N. C. Evidence 2d, § 75 (1963).

[5]   In this case the plaintiff, the personal representative of the deceased, in order to establish the identity of the driver of the vehicle, offered the evidence of the highway patrolman as to a statement made by the defendant that he, the defendant, was the driver of the Oldsmobile when it ran into the rear of the bus stopped on the road. Plaintiff contends that this did not open the door and the only testimony under G.S. 8-51 that the defendant Dean could give would be to deny that he made such statement to the officer. We do not agree with this contention. To do so would permit the plaintiff to prove the *fact* that the defendant Dean was operating the automobile at the time of the collision by what the witness said the defendant told him but would withhold from the defendant the right to deny the *fact* that he was driving. In other words, plaintiff would use defendant's words to prove his case against the defendant and then deny the defendant the right to use his words to prove his case against the plaintiff and limit him only to saying — I didn't tell the officer that. We think the trial judge correctly ruled that the plaintiff "opened the door" to this transaction with the deceased when plaintiff used the statement of the defendant that he was driving in order to make out a case for the jury. The "transaction" involved in this case was the driving of the automobile. The plaintiff used the defendant's words as a sword and then attempts to use the shield of the statute to prevent the defendant from asserting that plaintiff's intestate was the driver and that he was not the driver by permitting him only to say that he did not tell the officer he was the driver.

In 58 Am. Jur., Witnesses, § 360, the principle is stated thus:

"The act of a protected party in introducing in evidence testimony of the adverse party as to a transaction with the deceased, . . . or *in introducing his admissions* for the purpose of proving such a transaction, is equivalent to calling the witness to prove the transaction." (emphasis added)

We think the law should not and will not permit the plaintiff, the protected party, to call the defendant as his witness by using the de-

fendant's words to prove that he was the driver and then say to the defendant — all you can do is to deny you said it, and you cannot say that plaintiff's intestate drove the automobile and deny that you were the driver because that door was not opened.

Such a construction of the statute would permit the plaintiff to open the door as to who was driving wide enough for him to enter but deny the defendant the right to enter at the same door. Our interpretation of the statute, we think, limits the testimony to the same transaction and the same "door." It does not contradict but, in fact, is supported by the principle stated in Stansbury, N. C. Evidence 2d, § 75, p. 164, as follows:

"The competency of the interested witness is limited to the same transaction as the one testified about by the administrator or the deceased, or elicited from the witness himself by the administrator."

G.S. 8-51 relates not only to "personal transactions" but also to "communications" with a deceased person. Plaintiff contends that the court committed error in permitting evidence of transactions between the defendant and the deceased which had occurred the day before and hundreds of miles from the place of collision.

[6] The evidence tended to show that the automobile trip began in New York at about three o'clock P.M. on 21 November 1965 and continued without interruption, except for a stop when car trouble developed and stops for gas, until the collision in the early morning of 22 November 1965 in Wake County, North Carolina. We think that this was just one transaction and that it was competent for the defendant to testify about who was doing the driving on the trip after the plaintiff had used the words of the defendant to make out plaintiff's case.

[7] Plaintiff asserts that the court committed error in allowing the defendant Dean to answer certain questions as to conversation between the plaintiff's intestate and Dean on the trip from New York to the point of collision in North Carolina. These questions appear on pages 186 and 187 of the Transcript of the Evidence. At this point in the trial, the defendant's counsel was questioning the defendant on redirect examination, after the defendant had been cross-examined by plaintiff's counsel, when the following occurred as set out in plaintiff's seventh assignment of error, based on plaintiff's exception twenty-four:

"Q. Now, did Donald Joseph Pourch say anything to you about wanting or needing a relief driver at any time?

A. No sir.

Q. What did he say about driving the car and who would drive, if anything?

OBJECTION OVERRULED

A. As nearly as I can accurately remember, he said he would drive. It was his car and he would drive."

There was no objection made to the first of the above questions, and we are not concerned with it here. However, the second question is in direct conflict with the provisions of G.S. 8-51 relating to communications with a deceased person unless this particular communication could be considered a part of the above-mentioned personal transaction or unless the door was opened by the personal representative and the provisions of the statute waived with respect to such communication.

The law is that the incompetence of the adverse party to testify may be removed by his being cross-examined as to the transaction in question by the personal representative of the deceased, but only as to the particular matters inquired about. Jones, Evidence 2d, § 784 (1908, Pocket Edition issued 1911); Stansbury, N. C. Evidence 2d, § 75 (1963); *Gray v. Cooper*, 65 N.C. 183.

The defendant testified on direct examination, without objection, that he had never seen Donald Joseph Pourch prior to the afternoon of 21 November 1965 when he saw him at the Port Authority Terminal Building in New York City and testified generally as to what he did and what occurred concerning the trip to North Carolina but was not asked, and did not on his direct examination testify to, the contents of any verbal communication with the deceased. Plaintiff's counsel cross-examined the defendant before he was examined on redirect examination, and the following occurred:

"Q. Did you talk to Mr. Pourch, Donald Pourch, somewhere during the trip, as to what he did that same night, Saturday, November the 20th?

A. Yes, sir, I did.

Q. Did he indicate to you he got only a few hours' sleep himself that night?

MR. DUPREE: Objection.

COURT: Sustained.

MR. BRYSON: If he knows, Your Honor?

MR. DUPREE: I withdraw that Your Honor.

COURT: You may answer it.

Q. Did you discuss with Mr. Donald Pourch as to what he did on Saturday, November 20th, I believe you said 'yes'?

A. Yes, sir.

Q. Did he indicate that he had not had a great deal of sleep on this night?

A. Not that I recall sir."

[7] From the foregoing questions by plaintiff's counsel, it is readily apparent that he opened the door as to communications between the decedent and the defendant about this transaction. It was therefore not error for the trial judge thereafter to permit defendant's counsel to ask the defendant on redirect examination what the decedent had to say about driving the car. The protective provisions of the statute relating to communications with the deceased had been waived by the cross-examination of the defendant by plaintiff's counsel.

Plaintiff contends that the trial judge committed error by excluding plaintiff's exhibit three for the purpose of illustrating the patrolman's testimony. This exhibit three is designated a photograph and as presented in this Court, we take judicial notice that it is not reproduced on any photographic type of paper such as is usually and customarily used in the preparation of photographs. From an examination of the actual exhibit, it appears to be a dim reproduction, and not a very good one, of a photograph made by some copying machine that was about out of ink. It is a faded reproduction of what appears to be a wrecked automobile with its front damaged and the windshield in front of the driver in part shattered and in part either not damaged or completely broken out.

The trial judge had, prior to the testimony of the witness Andrews, admitted plaintiff's exhibit three for illustrative purposes when plaintiff's witness Brown was testifying, and it was passed to the jury. Then it was withdrawn by the court from jury consideration when plaintiff's witness Brown testified that it didn't illustrate any testimony of his as to how bad the automobiles *were damaged or anything.* (emphasis added)

The patrolman Andrews testified in substance except where quoted with respect to the damage to the Oldsmobile automobile that: "The front was damaged and was shoved back in towards the front seat

of the car. The right side, and the rear." That plaintiff's exhibit three fairly and accurately represents the appearance of the Oldsmobile that he found at the scene of the collision under investigation shortly after he arrived there at about 2:30 A.M. on 22 November 1965. That he later saw it at Strick's and it was in the same condition. When plaintiff offered exhibit three into evidence for illustrative purposes, the trial judge sustained defendant's objection thereto and remarked:

> "Objection is sustained. Well, to save time, I just don't think that these exhibits have any use for illustrative purposes. They're too dull. They show nothing clearly and I don't think they would be of any assistance to the jury in understanding the testimony. That is the main reason that I'm excluding it."

[8, 9]    As a general rule, photographs are competent to be used for the purpose of illustrating anything it is competent for the witness to describe in words.

> "The accuracy of a photograph must be shown by extrinsic evidence that the photograph is a true representation of the scene, object or person it purports to portray. 20 Am. Jur., Evidence, Sec. 730; *S. v. Mitchem*, 188 N.C. 608, 125 S.E. 190; *Pearson v. Luther*, 212 N.C. 412, 193 S.E. 739. 32 C.J.S., Evidence, Sec. 715. Wigmore on Evidence, 3rd Ed., Vol. 3, Sec. 793.
>
> The correctness of such representation may be established by any witness who is familiar with the scene, object, or person portrayed, or is competent to speak from personal observation. It is not necessary to prove this fact by the photographer who took the photograph. *Bane v. R. R.*, 171 N.C. 328, 88 S.E., 477; *White v. Hines*, 182 N.C., 275, 109 S.E., 31; *S. v. Matthews*, 191 N.C., 378, 131 S.E., 743; *S. v. Stanley, supra.*
>
> Whether there is sufficient evidence of the correctness of a photograph to render it competent to be used by a witness for the purpose of illustrating or explaining his testimony is a preliminary question of fact for the trial judge." *State v. Gardner*, 228 N.C. 567, 46 S.E. 2d 824.

Also in *State v. Matthews, supra*, we find the following statement:

> "Whether or not there is sufficient evidence of the correctness of a photograph to render it competent to be used by a witness for the purpose of illustrating or explaining his testimony is a preliminary question of fact for the judge."

In Stansbury, N. C. Evidence 2d, § 34, we find the following with respect to the introduction of photographs:

". . . it is within the discretion of the trial judge to prohibit its use *if the evidence as to its accuracy is conflicting. . . .* (emphasis added)

**[10]**   We are of the opinion and so decide that the preliminary question of fact as to whether plaintiff's exhibit three was sufficiently verified and correct to justify its admission in evidence as a photograph for illustrative purposes was for determination by the trial judge in the exercise of his judicial discretion. The decision of the trial judge is subject to review and may be reversed for abuse of discretion; however, in this case, in view of the testimony of the witnesses Brown and Andrews with respect to what plaintiff's exhibit shows and after an examination of the exhibit on file here, we are of the opinion that no abuse of discretion has been shown and that it was not prejudicial error to fail to admit plaintiff's exhibit three in evidence. See Annotation in 9 A.L.R. 2d 899-932.

Plaintiff also contends that the verdict was inconsistent, contradictory, and not supported by the evidence and that the court committed error in not setting it aside.

**[11]**   As to the contention that the verdict was not supported by the evidence, it is observed that by its verdict, the jury found that the plaintiff, who had the burden of proof on the first issue and the defendant, who had the burden of proof on the third issue, had failed to carry that burden. Such a finding does not require evidence to support it; on the contrary, a lack of evidence will support the negative answers to the issues.

**[12]**   The plaintiff contends that the plaintiff's intestate or the defendant Dean was clearly negligent and that the only question presented was as to who was driving. The pleadings and the evidence in the case do not make it that simple. The plaintiff alleged in his complaint that his intestate died as a proximate result of the actionable negligence of the defendant Dean and also that one of the proximate causes of his death was the actionable negligence of Eugene Andrew Canfield. The jury, by its verdict, found that the actionable negligence of the defendant Dean was not a proximate cause of the death of plaintiff's intestate. Under the facts in this case, such a finding is not inconsistent with or contradictory to the verdict of the jury that the actionable negligence of the plaintiff's intestate was not a proximate cause of any injuries that the defendant Dean may have sustained. We conclude that the verdict herein is not inconsistent or contradictory and is one that could be and was properly returned by the jury. The trial judge did not commit error in failing to set it aside.

The plaintiff contends that the trial court committed error in refusing to set aside the verdict because of errors during the trial. This contention is without merit.

The plaintiff contends that the trial court committed error in signing the judgment. This contention is also without merit.

### DEFENDANT'S APPEAL

Defendant assigns as error certain parts of the charge of the court, an asserted failure to apply the law to variant factual situations, and an asserted failure to give equal stress to the contentions of the defendant.

[13, 14]  The chief purpose of the charge to the jury is to aid the jurors to understand clearly the case and to arrive at a proper and correct verdict. The judge is required by G.S. 1-180 to charge the law on the substantial features of the case arising on the evidence given in the case, and give equal stress to the contentions of the parties.

We have carefully examined the charge of the court herein and are of the opinion that Judge Bone fully, adequately, and correctly charged the jury on the law on the substantial features of the case arising on the evidence and that he gave equal stress to the contentions of the parties.

This case was well and ably tried in the Superior Court by able lawyers before an able judge, and in the trial thereof we find no error.

On plaintiff's appeal No error.

On defendant's appeal No error.

CAMPBELL and MORRIS, JJ., concur.