PHILLIP A. STONE AND JOAN T. STONE v. PARADISE PARK HOMES, INC. AND JEAN R. WILLIAMS, EXECUTRIX OF THE ESTATE OF J. SHARPE WILLIAMS

No. 774SC705

(Filed 11 July 1978)

1. Evidence § 11.7— dead man's statute—inapplicable to corporate defendant—applicable to decedent's executrix

   In an action to recover damages for breach of warranty and fraud in the sale of a house, the dead man's statute, G.S. 8-51, did not apply to render incompetent as to the corporate defendant testimony by plaintiffs concerning conversations which they had with the deceased individual defendant, but the dead man's statute did render such testimony incompetent as to the executrix of the deceased defendant's estate.

2. Evidence § 11.8— dead man's statute—no waiver by cross-examination

   Defendants did not waive their exceptions to plaintiffs' testimony made incompetent by the dead man's statute when they cross-examined plaintiffs concerning their personal transactions with decedent.

3. Fraud § 12— sale of house—insufficiency of evidence of fraud

   Plaintiffs' evidence was insufficient to support a claim against the executrix of a deceased defendant for fraud in the sale of a house where plaintiffs' testimony as to representations by deceased was incompetent under the dead man's statute, and the competent evidence showed only that deceased took part in filling with vegetable debris the land on which the house was constructed.

4. Evidence § 48— construction standards—qualification of expert

   The trial court did not err in permitting plaintiffs' witness to testify as an expert that plaintiffs' house was not built according to acceptable construction and engineering standards prevailing in the area at the time where the evidence showed that the witness was a professor of engineering and held a Ph.D. in materials engineering, he was a licensed building contractor, and that some of the six houses he had built were built less than 25 miles from the house in question.

5. Sales § 19— sale of house—breach of implied warranty—measure of damages

   The trial court did not err in instructing the jury that the measure of damages for breach of implied warranty in the sale of a house was either (1) the difference in fair market value or (2) the amount which would be required to bring the house up to the standard of the implied warranty.

6. Trial § 52.1— refusal to remit verdict

   In an action for breach of warranty and fraud in the sale of a house, the trial court did not err in failing to remit the verdict of $16,000 to $12,500 because plaintiffs' evidence showed that the total damages were $16,000, of which $7,000 resulted from settlement of the house, and the jury found that damages of only $3,500 were caused by settlement, since the jurors may

believe all, part or none of the testimony, and the jurors apparently believed that the total damages amounted to $16,000 but that only $3,500 was allocable to settlement.

7. **Unfair Competition § 1; Fraud § 13; Sales § 19— sale of house—unfair trade practice—fraud—breach of warranties**

Fraud in the sale of a house constituted an unfair or deceptive act or practice in the conduct of trade or commerce within the meaning of G.S. 75-1.1 for which the buyer was entitled to treble damages under G.S. 75-16; however, the buyer was not entitled to treble damages under those statutes for breach of express and implied warranties in the sale of the house.

8. **Attorneys at Law § 7.5; Unfair Competition § 1— unfair trade practice—attorney's fees**

The trial court did not err in refusing to award attorney's fees under G.S. 75-16.1 to a plaintiff who prevailed in a suit to recover for deceptive acts and practices in the sale of a house where there was no evidence in the record to support findings that defendant willfully engaged in the act or practice and that there was an unwarranted refusal by defendant to pay plaintiffs' claim.

APPEALS by plaintiffs and defendants from *Webb, Judge.* Judgment entered 28 March 1977, in Superior Court, ONSLOW County. Heard in the Court of Appeals 30 May 1978.

Plaintiffs instituted this action seeking damages for breach of express and implied warranties and for fraud in the sale of a house which was under construction when plaintiffs purchased it from defendant, Paradise Park Homes, Inc. (Paradise). Plaintiffs also sought treble damages for violation of portions of Chapter 75 of the North Carolina General Statutes and punitive damages for the fraud. Originally, all claims were alleged against J. Sharpe Williams (Williams), the principal stockholder and president of defendant Paradise, and against defendant Paradise. The complaint alleged that Williams acted individually and as agent of the corporate defendant.

Prior to trial, defendant Williams died and the defendant Jean R. Williams, executrix of the estate of J. Sharpe Williams, was substituted as a party defendant to this action. When the case was called for trial, plaintiffs took a voluntary dismissal with prejudice on all portions of this action as to defendant Jean R. Williams, executrix, except that portion that arose out of the alleged failure of the deceased, individually and as agent of Paradise, to disclose that the house described in the complaint was constructed on land filled with vegetable debris.

At trial, the plaintiffs offered evidence tending to show that they contracted to purchase the house on 7 April 1973, after Williams assured them that the house would be completed in the manner requested by plaintiffs. After being advised by Williams that the house had been completed, plaintiffs moved from Quantico, Virginia, only to find that the construction had not been completed. Again Williams assured plaintiffs that the house would be finished, and, relying on these assurances, plaintiffs made the purchase and occupied the house.

Thereafter, defendant Paradise did little to complete the home. Later in 1973, Williams told Mrs. Stone that he would not finish the house, and, as a result, portions of the interior of the house were never completed by defendant. In addition, soon after occupying the house, plaintiffs discovered that the glass skylight over the atrium leaked, and that it could not be readily repaired; that the large fixed glass windows located in the front and the rear of the home had been improperly constructed and leaked during rainfalls causing damage to the woodwork, floors and carpet; that sewage was being released under the house; that the septic tank drain field was inadequate so that sewage was released in the backyard which became a breeding ground for rat-tail maggots; and that various lighting circuits did not work because of improper installation.

Within six months of the closing, vertical and horizontal cracks appeared in a large chimney in the center of the home; cracks appeared in the brick walls of the brick veneer; kitchen cabinets pulled away from the wall; and doors became out of plumb and would not close. In March 1974, the plaintiffs discovered that the land on which the house was constructed had been filled with vegetable debris, including trees, pine cones and needles.

Plaintiffs called as a witness, Charles R. Manning, who qualified as an expert in construction and materials engineering. Dr. Manning had examined the house in May 1974, and he testified extensively concerning defects he had discovered. He concluded that, in his opinion, the house

"was not built in respect to good construction standards and engineering standards in that all the problems that I have noted were due to inadequate foundation, undersized

materials, poor workmanship. These are the things that contributed to, in my opinion, that it was not of good standard."

He further testified, over objection, that it was his opinion that in June of 1973, it would have cost $16,000 to repair the defects described.

Defendants offered no evidence. At the close of the instructions to the jury, the trial court submitted the following issues to the jury. The jury's answers are in parentheses.

"Number One, Have the plaintiffs suffered damages by reason of breach of express warranty by the defendant, Paradise Park Homes, Incorporated? (Yes)

"Two, Have the plaintiffs suffered damages by reason of breach of implied warranty by the defendant, Paradise Park Homes, Incorporated? (Yes)

"Three, If so, in what amount have the plaintiffs been damaged thereby? ($16,000)

"Four, Have the plaintiffs suffered damages by reason of fraudulent acts and conduct of the defendants as alleged in the complaint? (Yes)

"Five, If so, in what amount have the plaintiffs been damaged by reason thereof? ($3,500)"

Both plaintiffs and defendants appeal.

*A. D. Ward, Alfred D. Ward, Jr. and Joshua W. Willey, Jr., for plaintiffs.*

*Warlick, Milsted & Dotson, by Alex Warlick, Jr., and Ellis, Hooper, Warlick, Waters & Morgan, by John D. Warlick, Jr., for defendants.*

ARNOLD, Judge.

### Defendants' Appeal

We shall consider four assignments of error made by defendants.

I.

[1]  Defendants argue that the trial court erred in admitting the testimony of the plaintiffs concerning conversations and transactions they had with the deceased original defendant, J. Sharpe Williams. The North Carolina dead man's statute, G.S. 8-51, provides in pertinent part:

"Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic; except where the executor, administrator, survivor, committee or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence concerning the same transaction or communication."

Since defendant Paradise is not an executor, administrator, or survivor of J. Sharpe Williams, deceased, we hold that the dead man's statute did not apply to make evidence of conversations plaintiffs had with Williams incompetent as to Paradise. On the other hand, we conclude that the evidence of those conversations was incompetent as to the executrix of the estate of Williams, because (1) the witnesses were parties to the action, (2) testifying in their own behalf, (3) against the personal representative of the deceased person, (4) concerning personal transactions and communications between the witnesses and the deceased. *See* *Peek v. Shook*, 233 N.C. 259, 63 S.E. 2d 542 (1951).

Plaintiffs argue, in essence, that, even if the evidence were incompetent as to the executrix of the estate of Williams, there was enough competent evidence from which the jury could reach a decision that Williams, and therefore his estate, were liable for fraud, the only claim alleged against the executrix defendant.

Assuming *arguendo* that plaintiffs are correct, and that the members of the jury could sort among the competent and incompetent evidence as to the liability of the executrix defendant, no attempt was made to limit the evidence relating to conversations with the deceased. The jury, therefore, was left with testimony replete with evidence concerning representations made by the deceased. We cannot say that they did not rely on these representations to find liability for fraud as against defendant executrix.

[2] Plaintiffs also argue that even if the evidence were incompetent, defendants waived their exceptions by cross-examining plaintiffs on the same personal tranactions, thereby "opening the door" to evidence by plaintiffs. We do not agree. First of all, since the evidence was competent as to defendant Paradise, to hold that defendants could not cross-examine plaintiffs' witnesses because they would waive their exception to incompetent evidence as to defendant executrix, is tantamount to denying defendants the right to cross-examine at all. This we refuse to do. For somewhat analogous dilemmas, *see Jones v. Bailey*, 246 N.C. 599, 99 S.E. 2d 768 (1957); *State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291 (1951); *State v. Godwin*, 224 N.C. 846, 32 S.E. 2d 609 (1945); *Shelton v. R.R.*, 193 N.C. 670, 139 S.E. 232 (1927).

Secondly, in the cases cited by plaintiffs to support their waiver argument, *Gay v. Supply Co.*, 12 N.C. App. 149, 182 S.E. 2d 664 (1971), and *Smith v. Dean*, 2 N.C. App. 553, 163 S.E. 2d 551 (1968), and in all the cases we researched, waiver of an exception to incompetent evidence under G.S. 8-51 occurs when the objecting party *first succeeds* in eliciting the incompetent evidence. *See, e.g., Pearce v. Barham*, 267 N.C. 707, 149 S.E. 2d 22 (1966); *Hayes v. Ricard*, 244 N.C. 313, 93 S.E. 2d 540 (1956); *Andrews v. Smith*, 198 N.C. 34, 150 S.E. 670 (1929); *Phillips v. Land Co.*, 174 N.C. 542, 94 S.E. 12 (1917).

Having concluded that plaintiffs' evidence of conversations with the deceased was incompetent as against the executrix defendant, we also conclude that the court should have granted the executrix defendant's motion for a directed verdict at the close of plaintiffs' evidence. The question presented by defendant's motion for a directed verdict under G.S. 1A-1, Rule 50, is whether the evidence, when considered in the light most

favorable to plaintiffs, is sufficient evidence to be submitted to the jury. *See, e.g., Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). In the instant case, competent evidence was required to show the essential elements of actionable fraud: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *See, e.g., Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974).

[3] In view of the extensive evidence which we view to be incompetent as against the executrix defendant by reason of G.S. 8-51, the only remaining evidence to support plaintiffs' claim for fraud was that the deceased Williams actually took part in filling the land on which the house was built. This evidence clearly will not support a claim for fraud against the executrix defendant, and her motion for a directed verdict should have been granted.

II.

[4] Defendants argue that the trial court erred in admitting the testimony of the witness, Charles R. Manning, that plaintiffs' house was not built according to acceptable construction and engineering standards prevailing in the area at the time. Defendants cite *Hartley v. Ballou*, 286 N.C. 51, 209 S.E. 2d 776 (1974), to show that Manning, in order to render an opinion of the construction of the house, should have been more knowledgeable about workmanlike quality in Onslow County in the year plaintiffs' house was constructed. After reviewing Dr. Manning's qualifications, we conclude that he was qualified to render an opinion and that the court's admission of his opinion was, therefore, not error. There was uncontroverted evidence that Dr. Manning was a Professor of Engineering of North Carolina State University; that, among other degrees, he held a Masters Degree and a Ph.D. in Materials Engineering; that he was a licensed building contractor in North Carolina and had been since 1972; that, among six houses he had built, some were built at Emerald Isle, Carteret County, less than twenty-five miles from Jacksonville. Based on these qualifications, we cannot find that the trial court abused its discretion in allowing Dr. Manning to testify as an expert.

## III.

**[5]** There is also no merit in defendants' contention that the trial court erred in instructing the jury as to the measure of damages for breach of an implied warranty. The portion of the instructions to which defendants took exception reads:

> "And I instruct you, that would also be the measure of damages. You may answer this issue — You measure the damages in either one of two ways. You may answer it by the difference in the fair market value of it or you can answer it in an amount which you are satisfied by the greater weight of the evidence would be required to bring this house up to the standard of the implied warranty.

DEFENDANTS' EXCEPTION NO. 127."

In *Hartley v. Ballou, supra,* a case involving breach of implied warranties, our Supreme Court assumed that prior to extensive efforts by defendant builder to remedy the defects, plaintiff could have maintained an action for damages for such breach, either (1) for the difference between the reasonable market value of the subject property as impliedly warranted, and its reasonable market value in its actual condition, or (2) for the amount required to bring the subject property into compliance with the implied warranty. *Id.* at 63, 209 S.E. 2d at 783. Since defendant builder had made extensive efforts to remedy the defects, and since plaintiff, with knowledge of defendant's efforts, accepted the subject property, the Court held that the proper measure of damages was damages for plaintiff's inconvenience and expense during the period from initial occupancy to completion of defendant's remedial efforts. We do not find the present case analogous to *Hartley v. Ballou,* and we accept the trial court's instructions regarding the measure of damages for breach of implied warranties. Furthermore, we reject defendants' efforts to apply G.S. 25-2-316(3)(b) to the facts of this case.

## IV.

**[6]** After the jury's verdict, defendants moved to remit the sixteen thousand dollars in order to make the verdict consistent with the verdict of thirty-five hundred dollars. Plaintiff's evidence on the issue of damages showed that the total damage was $16,000, of which $7,000 resulted from settlement of the house.

We do not agree with defendants' argument that since the jury returned a verdict of $3,500 on the question of damages caused by settlement, the $16,000 figure should have been reduced to $12,500. The jurors, as triers of fact, may believe all, part, or none of the testimony of a given witness. *See, e.g. Brown v. Brown*, 264 N.C. 485, 141 S.E. 2d 875 (1965). In the case *sub judice*, the jurors apparently believed that total damages amounted to $16,000, but that only $3,500 was allocable to damage due to settlement. We, therefore, see no error in the trial court's refusal to remit the amount of damages.

(Moreover, we note that plaintiffs do not contend that the jury's answers to the issues as submitted entitle them to combine the $16,000 and $3,500 for a total award of $19,500. That question, therefore, is not presented by this appeal.)

### Plaintiffs' Appeal

[7] Plaintiffs present only one issue, albeit a difficult one, for our determination. In their complaint, plaintiffs allege that the acts of defendants constituted unfair and deceptive acts and practices in the conduct of trade and commerce as declared unlawful by G.S. 75-1.1, and that, pursuant to G.S. 75-16, plaintiffs are entitled to treble damages and attorney's fees. The question is whether the trial court erred in denying plaintiffs' motion for treble damages and for an award of reasonable counsel fees. We cannot agree with plaintiffs that they are entitled to treble the $16,000 award. We find, however, that they are entitled to treble the $3,500 award because it was based upon fraud. In *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975), our Supreme Court noted that "[p]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ." *Id.* at 309, 218 S.E. 2d at 346.

There is no authority to support plaintiffs' argument that the remainder of the $16,000, *i.e.*, the portion attributable to damages solely for breach of implied and express warranties, should be trebled. G.S. 75-16 reads:

"If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this

Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."

Breach of such warranties alone does not constitute a "violation of the provisions" of Chapter 75 of the General Statutes. Hence, we conclude that it is inappropriate to treble damages resulting solely from breach of warranties.

[8]   As for attorney's fees, G.S. 75-16.1 states:

"In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that:

"(1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to pay the claim which constitutes the basis of such suit; or

"(2) The party instituting the action knew, or should have known, the action was frivolous and malicious."

Since we find no evidence in the record that would support the trial judge's findings that the contingencies in (1) occurred, we cannot find that he abused his discretion in refusing to award attorney's fee.

In summary, we conclude that the executrix defendant, Jean R. Williams, was entitled to a directed verdict, and judgment as to this defendant is hereby reversed. Judgment against Paradise Homes, Inc., however, is affirmed and modified to grant plaintiffs treble damages for that part of the verdict based upon fraud. It thus appears that plaintiffs are entitled to an award of $12,500 plus $10,500 ($3,500 trebled), or a total of $23,000.

Reversed in part.

Modified and affirmed in part.

Judges BRITT and ERWIN concur.