SYLVESTER DAVIS AND WIFE, RUTH DAVIS v. ALMA M. FLYNN, ADMINISTRA-
TRIX OF THE ESTATE OF OSCAR PEARSON HEGE

No. 8122SC579

(Filed 1 June 1982)

1. **Evidence §§ 11, 11.8— Dead Man's Statute—services rendered decedent by other plaintiff—expectation of compensation**

   In an action to recover for personal services rendered to decedent in the years prior to his death, the "Dead Man's Statute," G.S. 8-51, did not prohibit each plaintiff from testifying as to the services rendered by the other. Furthermore, by cross-examining the female plaintiff as to services rendered and the value thereof, defendant administratrix opened the door to testimony by the female plaintiff as to her expectation of compensation for the services she rendered to decedent.

2. **Executors and Administrators § 27; Quasi Contracts and Restitution § 2.2— services rendered to decedent—value of estate—relevancy**

   Testimony by defendant administratrix as to the value of decedent's estate was relevant to the value of services rendered by plaintiffs to decedent in view of testimony by plaintiffs' witness that decedent "said he was going to leave whatever he had" to plaintiffs.

APPEAL by defendant from *Battle, Judge.* Judgment entered 4 January 1981 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 3 February 1982.

Plaintiffs sought to recover for services rendered to the deceased, Oscar Pearson Hege, in the years prior to his death. Plaintiffs' evidence tended to show that deceased suffered from heart disease. Sylvester Davis testified that his wife, Ruth Davis, cared for deceased for approximately 25 to 30 hours per week. He stated that she prepared special diets and meals, took deceased to the doctor, grocery store and hospital and got medicine for him. Ruth Davis testified that her husband spent about 15 to 20 hours per week performing services for the deceased, such as reading the mail and taking deceased to the doctor and on errands.

Earlene Harris, a housekeeper and one of Mr. Hege's neighbors, testified that deceased told her that he did not have anyone to care for him except the Davises and that he planned to

leave whatever he had to them. She also testified that in her opinion, the services Ruth Davis rendered to deceased were worth $3.50 per hour. Jessie Stoner, another neighbor of deceased, testified that the deceased had planned to have some rooms added to his house for the Davises to occupy, and that the Davises would have the house when he died.

Administratrix Alma Flynn, the deceased's niece, testified that deceased's estate was worth $78,826.49.

Defendant appeals from an $18,000 jury verdict in plaintiff's favor.

*Grubb and Penry, by J. Rodwell Penry, Jr., for plaintiff appellees.*

*R. Lewis Ray and Associates, by R. Lewis Ray, for defendant appellant.*

MORRIS, Chief Judge.

We note at the outset that defendant has failed to include in the record on appeal the issues submitted to the jury and the verdict, in violation of Rule 9(b)(1)(vii) of the Rules of Appellate Procedure. Nor have references to pertinent assignments of error been identified by number in defendant's brief, as required by Rule 28(b)(5). More significantly, over 150 days elapsed between 18 December 1980, when notice of appeal was given, and the filing with this Court of the record on appeal, a breach of Rule 12(a). Even though the appeal is subject to summary dismissal, we choose to treat the purported appeal as a petition for a writ of certiorari which we have allowed, in order to discuss the case on its merits.

[1] Defendant first argues that the trial court erred in allowing plaintiffs, who are interested parties pitted against a party who has died, to give testimony in support of their claim. He cites G.S. 8-51, commonly referred to as the "Dead Man's Statute" as authority for the proposition that each of them should have been disqualified as a "party" and a "person interested in the event" because they both had a direct legal and pecuniary interest in the outcome of the litigation. G.S. 8-51 "prohibits a party, or interested person, from testifying in his own interest against the personal representative of a deceased person about a personal

transaction or communication between the witness and the deceased." *Etheridge v. Etheridge*, 41 N.C. App. 39, 41, 255 S.E. 2d 735, 737 (1979). The performance of services for the deceased by a witness has been held to be a personal transaction. *Godwin v. Tew*, 38 N.C. App. 686, 248 S.E. 2d 771 (1978). For testimony to be competent under the statute, the following four questions must all be answered in the affirmative:

1. Is the witness (a) a party to the action, or (b) a person interested in the event of the action, or (c) a person from, through or under whom such a party or interested person derives his interest or title?

2. Is the witness testifying (a) in his own behalf or interest, or (b) in behalf of the party succeeding to his title or interest?

3. Is the witness testifying against (a) the personal representative of a deceased person, or (b) the committee of a lunatic or (c) a person deriving his title or interest from, through or under a deceased person or lunatic?

4. Does the testimony of the witness concern a personal transaction or communication between the witness and the deceased person or lunatic?

*Peek v. Shook*, 233 N.C. 259, 261, 63 S.E. 2d 542, 543 (1951). Ruth and Sylvester Davis each testified regarding services rendered the decedent by the other. Neither plaintiff testified in his own behalf or interest. Therefore, the second and fourth inquiries outlined in *Peek* must be answered in the negative. This renders the statute inapplicable. *Bank v. Atkinson* and *Atkinson v. Bennett*, 245 N.C. 563, 96 S.E. 2d 837 (1975), *Burton v. Styers*, 210 N.C. 230, 186 S.E. 248 (1936). *Woodard v. McGee* and *Little v. McGee*, 21 N.C. App. 487, 204 S.E. 2d 871 (1974), is instructive. There, two plaintiffs claimed the existence of service contracts with the deceased. The deceased allegedly promised each plaintiff $6,000 worth of stock at his death in exchange for the performance of certain services. We upheld in *McGee* the trial court's exclusion of each plaintiff's testimony regarding his dealings with the deceased, and sanctioned its allowance of testimony as to conversations between the deceased and one of the plaintiffs, brought out by the other plaintiff while testifying. Therefore, we

find, as we did in *McGee*, that the trial court acted properly in permitting each plaintiff to testify as to services rendered by the other. The fact that the actions were tried together does not alter the result. *Burton v. Styers*, supra.

Defendant also asserts that the trial court erred in allowing Ruth Davis to testify as to whether she expected to be compensated for the services she performed for deceased. This contention is without merit. The general rule is that a claimant is incompetent under G.S. 8-51 to testify as to the value of personal services rendered by him to a decedent. *Peek v. Shook*, supra. Defendant's counsel, however, on cross examination inquired as to services rendered, and elicited from Mrs. Davis her sentiment regarding the remuneration to which she was entitled. Mrs. Davis on redirect then stated that she expected compensation for those services. "The law is that the incompetence of the adverse party to testify may be removed by his being cross-examined as to the transaction in question by the personal representative of the deceased, . . . (Citations omitted.)" *Smith v. Dean*, 2 N.C. App. 553, 561, 163 S.E. 2d 551, 556 (1968). We hold that defendant, by cross examining Ruth Davis as to services rendered and the value thereof, "opened the door" for Mrs. Davis to testify regarding her expectation of being compensated, as her testimony on both cross and redirect examination involved the same transaction; i.e., personal services performed for decedent. See *Gray v. Cooper*, 65 N.C. 183 (1871), and *Godwin v. Tew*, supra.

[2] Finally, defendant submits that the court erred in compelling the administratrix to testify as to the value of the deceased's estate, on the grounds of irrelevancy and because the probative value of the evidence, if any, was outweighed by its prejudicial nature. We hold that the information was relevant to the value of the services in view of Earlene Harris's testimony that deceased "said he was going to leave whatever he had" to the Davises. Even were we to deem the value of the estate irrelevant, evidence of the value per hour of the plaintiffs' services multiplied by the number of hours the services were rendered overwhelmingly supports the verdict. The admission of the value of the estate, therefore, could not have been prejudicial.

No error.

Judges VAUGHN and MARTIN (Harry C.) concur.