JAMES W. MILLER, D/B/A JIM'S HEATING, PLUMBING & ELECTRICAL v. CONNIE GAIL P. ENSLEY, R. KEITH ENSLEY AND D. JACK PHARR

No. 8726DC371

(Filed 16 February 1988)

**Unfair Competition § 1— father building house for daughter—representation that house was his—no unfair or deceptive trade practice**

　　The trial court erred in finding and concluding that defendant's actions constituted an unfair or deceptive trade practice where defendant, a travel

agency owner, entered 'the home building arena to help his children build homes; in so doing he represented that the land upon which the house would be built was still his, when in fact it was not; this misrepresentation or deception had no impact on the damages to plaintiff, a heating, plumbing and electrical contractor who was able to protect his rights by a lien claim under Chapter 44A; and defendant's actions did not rise to the harm proscribed under Chapter 75.

APPEAL by defendants from *Sherrill, Judge.* Judgment entered 2 January 1987 in District Court, MECKLENBURG County. Heard in the Court of Appeals 26 October 1987.

*Mitchell & Rallings by Thomas B. Rallings, Jr., for plaintiff appellee.*

*Weinstein & Sturges by L. Holmes Eleazer, Jr., E. Fitzgerald Parnell, III, and T. L. Odom, for defendant appellants.*

COZORT, Judge.

The plaintiff in this action, James W. Miller, is a heating, plumbing and electrical contractor doing business as Jim's Heating, Plumbing and Electrical. The defendants R. Keith and Connie Gail P. Ensley, husband and wife, are record owners of a parcel of real property located at 6500 Long Road, Mint Hill, Mecklenburg County, North Carolina. Defendant D. Jack Pharr, father of Connie Ensley, is the previous owner of the Long Road property.

On 6 April 1983, Pharr and his wife conveyed the Long Road property to the Ensleys so that their daughter and her husband would have land upon which they could construct a home. After the construction was underway, in June of 1983, plaintiff Miller was hired to perform some of the work on the Ensleys' home.

Specifically, Miller was hired by Pharr to install plumbing pipes and fixtures for $3,974.00; 200 Amp electrical service with panel and breakers, receptacles, plates, and switches for $3,600.00; a U. S. Central Vacuum System for $1,230.00; and two Mammoth Sol-A-Terra II Hydrobank heat pumps with a "closed loop" for $11,900.00. The first two jobs were agreed to by the parties on "Proposal" forms that were signed only by Miller and Pharr. Work to be performed, material to be used, price and method of payment were all spelled out on both "Proposal[s]." On the face of each "proposal" appeared the following language:

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over. and above the estimate.

For the other two jobs, the agreement to perform the work was oral. The only written evidence of completed performance was the work orders presented by Miller to Pharr.

The total amount of the work orders presented by Miller to Pharr was $20,704.00. Pharr paid $12,000.00 leaving, according to plaintiff's Exhibit No. 7, a balance due of $8,704.00.

It was at this point in the transactions that a dispute arose. Miller alleged that the jobs he had been requested to perform had been completed and Pharr owed the balance. Pharr, maintaining that the heating and air system Miller installed did not work properly, refused to pay the balance due until the system worked properly. As a result of that dispute, Miller filed this action alleging that the defendants were jointly and severally liable to him in the amount of $8,704.00, plus interest. Miller alleged further that defendant Pharr had represented that he was the record owner of the Long Road property after he had in fact conveyed it to the defendants Ensley, and that because Miller would not have entered into the contract if he had known the truth, defendant Pharr's representation of ownership constituted unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1.

Plaintiff and defendants offered evidence at the trial. At the close of all the evidence, the jury determined that each of the three defendants either "breach[ed] or repudiate[d]" the contracts with Miller; that they were jointly and severally liable to him in the amount of $8,594.00; that defendant Pharr represented that he was the owner of the Long Road property in spite of the fact that he was not; and lastly, that the conduct of defendant Pharr was in or affected commerce.

The trial judge then found:

1. The aforesaid contract[s] between Plaintiff and Defendants were for the construction of improvements by Plaintiff upon that real property . . . owned continuously by the De-

fendants Ensleys at all times during which Plaintiff supplied labor and materials to said property.

\* \* \* \*

5. The Defendants have deposited with the Clerk of Superior Court for Mecklenburg County the sum of $8,704.00 in cash, pursuant to the provisions of GS § 44A-16(5) and the aforesaid Claim of Lien has been discharged pursuant thereto.

6. That the aforesaid actions of the Defendant Pharr as found by the jury were willful.

7. That there was an unwarranted refusal by the Defendant Pharr to fully resolve this matter.

The court then concluded that, as a matter of law, the actions

of the Defendant Pharr as found by the jury do constitute unfair or deceptive acts or practices in or affecting commerce in violation of GS § 75-1.1, and that the Damages awarded the Plaintiff herein from the Defendant Pharr should be trebled pursuant to GS § 75-16; that the Plaintiff should recover of the Defendant Pharr a reasonable attorney fee pursuant to GS § 75-16.1; and that based upon the Claim of Lien filed by the Plaintiff herein, the aforesaid proceeds deposited with the Clerk of Superior Court for Mecklenburg County shall be applied to the judgment rendered herein pursuant to GS § 44A-16(5).

The court then ordered

that the Plaintiff have and recover of the Defendants, Connie Gail P. Ensley, R. Keith Ensley, and D. Jack Pharr, jointly and severally, the sum of $8,594.00 plus interest thereon at the rate of 8% per annum from and after April 11, 1984; that the Clerk of Superior Court for Mecklenburg County, North Carolina, shall make payment to the Plaintiff of the sum of $8,704.00 heretofore deposited by the Defendants with said Clerk, which sum shall be applied to the Judgment rendered herein against the Defendants Connie Gail P. Ensley, R. Keith Ensley, and D. Jack Pharr; that the Plaintiff have and recover of the Defendant, D. Jack Pharr, the additional sum of $17,188.00 plus interest thereon at the rate of 8% per an-

num from and after April 11, 1984; that the Plaintiff recover of the Defendants, Connie Gail P. Ensley, R. Keith Ensley and D. Jack Pharr, jointly and severally, the costs of this action to include the sum of $505.80 for deposition expenses incurred by Plaintiff; and recover additional costs from the Defendant Pharr for attorneys fees in the sum of $6452.50.

From entry of that judgment the defendants appealed. On appeal they allege that the court erred when it (1) charged the jury on repudiation of contracts, (2) entered judgment awarding plaintiff damages against the defendants for breach of contract and denying damages against the plaintiff for breach of contract on the ground that the evidence before the jury was insufficient to support the verdict, and (3) awarded Miller costs, treble damages, and attorney's fees. We agree that the facts of this case do not constitute an unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1, and reverse the trial court's awards pursuant to that statute; the remainder of the order below is affirmed.

We first consider the defendant Pharr's argument that the trial court erred in finding and concluding that his actions constituted an unfair or deceptive trade practice. N.C. Gen. Stat. § 75-1.1 states that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful," and when damages have been fixed as a result of violations of the chapter, they must be trebled. *Id.* at § 75-16. In interpreting Chapter 75, our Supreme Court has held that "[t]he concept of 'unfairness' is broader than and includes the concept of 'deception.' [Citation omitted.] A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscruplous, [*sic*] or substantially injurious to consumers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980). The court noted specifically that the language of the statute contemplated "two distinct grounds for relief," but noted also that "[w]hile an act or practice which is unfair may also be deceptive, or vice versa, it need not be so for there to be a violation of the Act." *Id.* Succinctly, "[w]hat is . . . unfair or deceptive . . . usually depends upon the facts of each case and the impact the practice has in the marketplace." *Id.* at 262-63, 266 S.E. 2d at 621.

In this case, the finding of a violation of Chapter 75 is based on one factor: that Pharr told Miller that he owned the land upon which the improvements were to be made by Miller. At trial, Miller testified that when he was a subcontractor, prior to his dealings with Pharr, he

> had no recourse on anything when the contractor went out of business and then went bankrupt. But I could do nothing but come back on the contractor, and it was just a good lesson at that time, and I found out that the people either had to be landowners for me to be able to place a lien on the property for me to get paid for my work where I get no recourse whatsoever, and so I still do that today.

The trial judge concluded that since the finder of fact had determined that Miller had been deceived on this point, Chapter 75 remedies were appropriate. We hold that this was error.

Not every commercial transaction resulting in litigation forms a basis for an action under Chapter 75, and every false statement does not constitute a "deceptive" act under Chapter 75. To be actionable under Chapter 75, an act of deception must have some adverse impact on the individual or entity deceived. In the case below, Pharr's "deception," that he was the owner of the tracts did not affect Miller's rights adversely. Miller was able to protect his rights by a lien claim under Chapter 44A. Thus, the harm caused by Pharr's deception was, at most, theoretical, and not actual.

Furthermore, we do not believe Pharr's actions, *i.e.*, a father acting as a contractor to build a house for his daughter, rise to the harm proscribed under Chapter 75. In a recent case before this Court, Chapter 75 damages were found to be proper when a contractor breached a contract with a glass company. *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 362 S.E. 2d 578 (1987). In that case, the defendant, a developer and builder, had engaged in "a pattern of deceitful and misleading" practices in the construction of a residence in the Asheville area. He had secured the services and materials of various businesses and contractors, including plaintiff Jennings, without payment of just compensation and "'without the intent to pay just compensation.'" *Id.* at 53, 362 S.E. 2d at 584. The defendant's actions were so

---

Miller v. Ensley

---

egregious that a review of his activities led "unerringly to a Chapter 75 claim." *Id.*

We find the facts below distinguishable. Defendant Pharr, a travel agency owner, entered the home-building arena to help his children build homes. In so doing, he represented that the land upon which the house would be built was still his, when in fact, it was not. This misrepresentation, or "deception," had no impact on the damages to Miller. Quite simply, we find no deceptive trade practice, as prohibited in Chapter 75. The trial court's order finding and concluding to the contrary must be reversed.

The defendant has also argued assignments of error dealing with the sufficiency of the evidence to support a verdict for the plaintiff and dealing with the trial court's charging the jury on repudiation of contracts. We have reviewed the record below, and we find no merit to either assignment of error. The portion of the trial court's order awarding damages for breach of contract is affirmed.

In summary, we reverse the portion of the trial court's judgment trebling damages and awarding attorney's fees under Chapter 75. We affirm the portion awarding $8,594.00, plus interest, for breach of contract.

Affirmed in part; reversed in part.

Judges WELLS and JOHNSON concur.