WILLIAM E. MITCHELL, ROBIN P. MITCHELL, AND RUBY P. PARSONS, PLAINTIFFS V. JOHN PAUL LINVILLE, JOYCE GRIFFIN LINVILLE, AND LINVILLE HOME BUILDERS, INC., DEFENDANTS

No. COA00-1485

(Filed 28 December 2001)

1. **Unfair Trade Practices— house construction—structural defects**

   The trial court erred by concluding that defendants committed unfair and deceptive trade practices arising from the construction of a house where the court relied upon structural defects in plaintiff's home to conclude that defendants breached the implied warranty of habitability, but did not indicate substantial aggravating circumstances which would transform defendants' action into a Chapter 75 violation.

2. **Unfair Trade Practices— house construction—failure to inform buyer of builder's corporate existence**

   The individual defendants' failure to inform plaintiffs of the existence of their corporate construction company did not support conclusions of unfair and deceptive trade practices where all of plaintiffs' damages arose from structural damages to their home. The individual defendants' failure to inform plaintiffs of their company's existence did not impact plaintiffs' damages.

3. **Construction Claims— home builders—individually liable**

   The trial court did not err by concluding that defendants were individuality liable for their actions in breaching the implied war-

MITCHELL v. LINVILLE

[148 N.C. App. 71 (2001)]

ranty of habitability where the evidence showed that the initial offer to purchase was signed by defendants as individuals, their corporate building company was not mentioned in any document until five days before closing and after a majority of the construction had been completed, and there was ample evidence that both defendants were actively involved in the construction of plaintiffs' residence.

**4. Unfair Trade Practices— attorney fees—improperly awarded**

The trial court erred by awarding attorney fees to plaintiffs where the court erroneously concluded that defendant committed an unfair and deceptive trade practice.

Appeal by defendants from judgment entered 4 April 2000 by Judge Henry E. Frye, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 28 September 2001.

*Craige, Brawley, Liipfert & Walker, L.L.P., by William W. Walker, for plaintiff appellees.*

*Sharpless & Stavola, P.A., by Frederick K. Sharpless and Eugene E. Lester, III, for defendant appellants.*

TIMMONS-GOODSON, Judge.

John Linville, his wife, Joyce Linville ("the Linvilles") and their construction company, Linville Home Builders, Inc. ("Home Builders") (collectively "defendants"), appeal from the trial court's judgment finding them liable for unfair and deceptive trade practices. On 30 December 1997, William Mitchell and his wife, Robin Mitchell ("plaintiffs"), filed a complaint against defendants alleging negligence, breach of contract, and unfair and deceptive trade practices in the sale and construction of plaintiffs' home. The trial court heard the matter on 26 April 1999, at which time the following evidence pertinent to this appeal was presented:

Plaintiffs entered into an agreement with the Linvilles in May of 1994 for the purchase of a lot and construction of a residence in Kernersville, North Carolina. In the contract, the Linvilles agreed to construct plaintiffs' residence, although neither of the Linvilles held a general contractor's license. The contract did not refer to Home Builders, nor did the Linvilles inform plaintiffs that such corporation existed. Thus, plaintiffs knew of no involvement by Home Builders

MITCHELL v. LINVILLE

[148 N.C. App. 71 (2001)]

in the construction of plaintiffs' residence at the time they signed the contract.

The completion date for the residence was 17 January 1995. On 30 December 1994, the Linvilles conveyed to Home Builders by general warranty deed the lot and the residence, the construction of which was nearly completed. On 11 January 1995, the Linvilles and plaintiffs entered into a second agreement to purchase and contract. Plaintiffs understood that a second contract was necessary because the lot upon which plaintiffs' house stood had been re-numbered, and subsequently, the first contract no longer recited the correct lot number. The second contract listed Home Builders at the top of the document.

Plaintiffs closed on the residence on 16 January 1995. The documents signed by plaintiffs at the closing referred to the seller and contractor as Home Builders. After moving into the residence, plaintiffs discovered numerous and substantial defects in the property.

Upon reviewing the evidence, the trial court concluded that defendants had breached the implied warranty of habitability for plaintiffs' residence and had committed unfair and deceptive trade practices. The trial court therefore trebled plaintiffs' damages and awarded attorneys' fees to plaintiffs. Defendants now appeal to this Court.

---

Defendants present three questions for review, contending that the trial court erred by (1) concluding that defendants committed unfair and deceptive trade practices; (2) finding the Linvilles individually liable; and (3) awarding attorneys' fees. For the reasons set forth herein, we reverse the judgment of the trial court in part.

## I. *Unfair and Deceptive Trade Practices*

[1] Defendants contend that the trial court's findings do not support its conclusion that defendants committed unfair and deceptive trade practices. After careful review of the trial court's findings, we agree with defendants.

North Carolina General Statutes section 75-1.1 declares unlawful "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1 (1999). "To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting

commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). Whether a trade practice is unfair or deceptive "depends upon the facts of each case and the impact the practice has in the marketplace." *Johnson v. Insurance Co.*, 300 N.C. 247, 262-63, 266 S.E.2d 610, 621 (1980). The language of the statute sets forth two distinct grounds for relief. *See id.* at 262, 266 S.E.2d at 621. If a practice has the capacity or tendency to deceive, it is deceptive for the purposes of the statute. *See id.* at 265, 266 S.E.2d at 622. "Unfairness" is a broader concept than and includes the concept of "deception." *See id.* at 263, 266 S.E.2d at 621. "A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* Neither an intentional breach of contract nor a breach of warranty, however, constitutes a violation of Chapter 75. *See Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992); *Trust Co. v. Smith*, 44 N.C. App. 685, 691, 262 S.E.2d 646, 650, *disc. review denied*, 300 N.C. 379, 267 S.E.2d 685 (1980), *overruled on other grounds*, *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981).

In the instant case, the trial court's findings regarding unfair and deceptive trade practices concern two basic issues: (1) construction deficiencies in the home and the failure of defendants to properly address such deficiencies, and (2) the failure of the Linvilles to list Home Builders on the first contract or otherwise inform plaintiffs of the corporation's existence. We address each of these grounds in turn.

The trial court recited the following facts concerning construction deficiencies in plaintiffs' residence in support of its conclusion that defendants committed unfair and deceptive trade practices:

84. Defendants installed inferior cabinets that had markedly different shades and were poorly constructed. When given notice of the problems, defendants promised, but then failed to remedy the defects and then refused to replace or repair the cabinets further, although they had the means to do so. The Agreement signed on January 16, 1995, shows plaintiffs' serious concerns about the cabinets and confirms that defendants promised plaintiffs before closing that their concerns would be met. Plaintiffs relied on defendants' assurances as to the cabinets; and plaintiffs would

not have closed but for those assurances. This behavior by defendants caused plaintiffs to suffer damages of $18,144.90.

85. The construction of plaintiffs' house required substantial repairs, and had negative effect on the fair market value of plaintiffs' house. The house as purchased by plaintiffs contained at least six deficiencies that were violations of the North Carolina Building Code. The basement shows signs of settlement, the bay window is pulling away from the house and [affecting] the use of the kitchen floor, and the gas logs were left in an unsafe condition.

86. . . . . The defendants [misled] plaintiffs as to the availability of a truss system for the first floor. Defendants misled plaintiffs as to the need for support timbers in their basement. Defendants failed and refused to seriously address and deal with punch list items presented to them on numerous [occasions] by plaintiffs. Defendants failed and refused to pay plaintiffs for damage to the vinyl kitchen floor even though it was agreed by all concerned that the floor needed to be replaced.

As indicated *supra*, "actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking and Trust Co.*, 107 N.C. App. at 62, 418 S.E.2d at 700 (citation omitted). " '[S]ubstantial aggravating circumstances' " must attend the breach in order to recover under the Act. *Id.* (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)). A violation of Chapter 75 is unlikely to occur during the course of contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties. *See Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368, 533 S.E.2d 827, 833, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000); *Stone v. Homes, Inc.*, 37 N.C. App. 97, 105-06, 245 S.E.2d 801, 807-08, *disc. review denied*, 295 N.C. 653, 248 S.E.2d 257 (1978).

In *Stone*, the plaintiffs instituted an action seeking damages for breach of express and implied warranties and for fraud in the sale of a house that was under construction when the plaintiffs purchased it from the defendant corporation. The evidence showed that the defendant repeatedly assured the plaintiffs that their house would be completed in the manner requested by the plaintiffs. Relying upon

these assurances, the plaintiffs moved into the home only to discover that the windows leaked, various lighting circuits were inoperable, and "the septic tank drain field was inadequate so that sewage was released in the backyard which became a breeding ground for rattail maggots." *Stone*, 37 N.C. App. at 99, 245 S.E.2d at 804. The defendant refused to complete construction on the home, moreover, leaving portions of the interior unfinished. Within six months, numerous cracks appeared in the walls and chimney of the home, and substantial defects in the doors and kitchen cabinets materialized. Further, "plaintiffs discovered that the land on which the house was constructed had been filled with vegetable debris." *Id.* The jury awarded the plaintiffs $16,000.00 in damages arising from the structural defects, and $3,500.00 in damages due to the defendant's fraudulent concealment of the vegetable debris beneath the house.

On appeal, this Court agreed that such construction deficiencies breached express and implied warranties, but held that the plaintiffs were not entitled, under Chapter 75, to treble the damages attributable solely to breaches of such warranties. The Court did allow, however, the plaintiffs to treble those damages arising from the defendant's acts of fraud.

In the instant case, the findings concerning the structural defects in plaintiffs' home and subsequent award of damages based upon such defects, while certainly supportive of the conclusion that defendants breached the implied warranty of habitability, do not indicate "substantial aggravating circumstances attending the breach" as to transform defendants' actions into a Chapter 75 violation. For example, the trial court found that, at the 16 January 1996 closing, defendants promised to remedy the inferior-grade cabinets they had installed in plaintiffs' house and that, relying upon defendants' assurances, plaintiffs closed on the house. Defendants thereafter failed to remedy these defects.

Defendants' failure to remedy was not an act tending to mislead or deceive the average consumer, *see Johnson*, 300 N.C. at 265-66, 266 S.E.2d at 622, in that defendants did not affirmatively misrepresent the quality of the cabinets or defendants' ability to replace them. Rather, defendants failed to honor their agreement. *Cf. Rucker v. Huffman*, 99 N.C. App. 137, 142, 392 S.E.2d 419, 422 (1990) (holding that unfair and deceptive trade practices were warranted where the defendant-seller affirmatively misrepresented to the plaintiff-buyers the severity of a problem with standing water under the house). Defendants openly acknowledged at closing that the cabinets were

unacceptable, and they thereafter attempted to replace them. Unfortunately, the replacement cabinets were also substandard, and plaintiffs refused to accept them. By failing to remedy the defective cabinets, defendants breached their agreement, but they did not "offend[] established public policy" or commit an "immoral, unethical, oppressive, unscrupulous, or substantially injurious" act. *Johnson*, 300 N.C. at 263, 266 S.E.2d at 261. Based on the trial court's findings regarding the cabinets, we discern no grounds for elevating defendants' actions beyond breach of contract or warranty.

Additional findings by the trial court concerning structural defects in plaintiffs' residence provide no further support for its conclusion that defendants committed unfair and deceptive trade practices. Although the trial court concluded that defendants "misled" plaintiffs concerning the availability of a truss system for the first floor of their residence and the need for support timbers in the basement, a close examination of the findings does not support such a conclusion. The trial court made the following specific findings regarding the truss system:

34. The new Construction Addendum attached to the Offer To Purchase And Contract dated 5-9-94 provided for a truss system in the first floor of plaintiffs' house. Early in the construction, John Linville informed plaintiffs that a truss system could not be used and that a conventional "stick" framing had to be used instead. Construction proceeded on that basis. Defendants gave plaintiffs a $5,000.00 credit for the change.

35. Plaintiffs discovered later that a truss system could have been used for their floor. As a result of the change to "stick" framing, plaintiffs' use of their basement is restricted by support columns that would not be present if a truss system had been used as originally agreed.

These findings do not support the conclusion that defendants "misled" plaintiffs or otherwise committed unfair and deceptive trade practices. The fact that *John Linville* informed plaintiffs that a truss system would not be possible in their home does not indicate wrongdoing by the other defendants, nor, standing alone, does it indicate bad faith or an affirmative misrepresentation by Mr. Linville. Moreover, plaintiffs received a $5,000.00 credit for the change to "stick" framing, and the trial court assigned no damages arising from plaintiffs' restricted use of their basement. Thus, the trial court's find-

ings concerning the truss system, together with the other findings regarding construction deficiencies, do not indicate unfair and deceptive trade practices by defendants.

[2] The second category of findings recited by the trial court in support of its conclusion that defendants violated Chapter 75 concern the Linville's failure to inform plaintiffs about their construction company. The trial court made the following findings regarding the Linville's actions:

> 83. Joyce Linville . . . did considerably less than John Linville and [Home] Builders, but she was still a part of multiple acts that were unfair to plaintiffs. She was an officer and director of Home Builders, yet she allowed the business to be operated in such a way that plaintiffs had no notice that it was involved in building the residence. She agreed in May 1994 to construct the residence even though she did not have a general contractor's license. She knew (she testified) in May 1994, when she signed the first Offer To Purchase And Contract, that the builder should be shown as Home Builders, but she did not inform plaintiffs of this, and she did not take any steps to correct the Offer To Purchase And Contract. Instead, she allowed the construction to proceed with plaintiffs believing they were dealing with the Linvilles as individuals. In December 1994, when construction was almost complete, she sold her interest in the lot and residence to Home Builders without plaintiffs' knowledge or permission. On January 11, 1995, five days before closing, she tried to change the parties' agreement by inserting Home Builder's name on the second Offer To Purchase and Contract. Before and after closing, she had full knowledge of plaintiffs' complaints about the various construction deficiencies, yet she did nothing to correct the problems.

> . . . .

> 86. The individual Linvilles built plaintiffs' house even though they did not have a general contractor's license. The Linvilles sold the lot and residence to Home Builders without plaintiffs' knowledge or permission. The Linvilles tried to remove themselves from the construction agreement and place all responsibility on Home Builders without providing a full and fair explanation to plaintiffs.

> 87. Defendants' acts described in the preceding paragraphs were in and affecting commerce.

MITCHELL v. LINVILLE

[148 N.C. App. 71 (2001)]

While we agree that the above-stated findings detail potentially misleading and unfair acts by the Linvilles, such findings nevertheless do not establish that the Linville's actions led to plaintiffs' damages. "To be actionable under Chapter 75, an act of deception must have some adverse impact on the individual or entity deceived." *Miller v. Ensley*, 88 N.C. App. 686, 691, 365 S.E.2d 11, 14 (1988). All of plaintiffs' damages arose from structural defects in their home. There was no finding by the trial court that plaintiffs would not have entered into the contract had they known of Home Builder's involvement, or that the Linville's failure to inform plaintiffs of Home Builder's existence caused plaintiffs to suffer damages. The trial court likewise assigned no damages to the Linville's sale of the lot and residence to Home Builders without plaintiffs' knowledge or permission. Because there was no causal connection between the potentially misleading acts by the Linvilles and the damages suffered by plaintiffs as a result of defendants' breach of the implied warranty of habitability, we hold the trial court erred in concluding that defendants committed unfair and deceptive trade practices. *See id.*, 88 N.C. App. at 691-92, 365 S.E.2d at 14 (holding that, where deception by defendant had no impact on plaintiff's damages, remedy under Chapter 75 was inappropriate).

Because defendants' faulty construction of plaintiffs' house did not constitute unfair and deceptive trade practices, and because the Linville's failure to inform plaintiffs of Home Builder's existence did not impact plaintiffs' damages, we hold the trial court erred in concluding that defendants committed unfair and deceptive trade practices.

## II. *Individual Liabilty*

[3] The Linvilles further argue the trial court erred in finding and concluding that they were individually liable to plaintiffs. The Linvilles contend that they were acting at all times as agents of Home Builders, and that the trial court erred in finding otherwise. We disagree.

Competent evidence before the trial court tended to show that the initial Offer To Purchase and Contract was signed by the Linvilles in their individual capacities. Home Builders was not mentioned in any document until 11 January 1995, five days before closing and after a majority of the construction of plaintiffs' home had been completed. Further, there was ample evidence that both John and Joyce

Linville were actively involved in the construction of plaintiffs' residence. It is well established that

> in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, . . . the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner.

*Hartley v. Ballou*, 286 N.C. 51, 62, 209 S.E.2d 776, 783 (1974). We therefore hold the trial court did not err in concluding that the Linvilles were individually liable for their actions in breaching the implied warranty of habitability.

We note that the trial court failed to apportion damages among defendants, ordering simply that "judgment is entered for plaintiffs." Under the conclusions of law concerning breach of warranty, however, the trial court determined that

> Plaintiffs are entitled to a judgment against each of the defendants for breach of implied warranty of habitability. Each of the defendants entered into an agreement with plaintiffs to construct and sell a residence to plaintiffs. Each of the defendants was in the construction business; and each of the defendants participated in the construction of plaintiffs' residence.

Moreover, in their complaint, plaintiffs requested "judgment against defendants jointly and severally." We therefore hold that the judgment of liability by the trial court against defendants was joint and several.

### III. *Attorneys' Fees*

[4] Defendants contend that the trial court erred in awarding attorneys' fees. In light of our conclusion that defendants committed no unfair and deceptive trade practices, we agree that the award of attorneys' fees was inappropriate in the instant case.

In summary, we hold that there were insufficient findings to support the trial court's conclusion that defendants committed unfair and deceptive trade practices in the construction of plaintiffs' home. Plaintiffs are therefore not entitled to an award of attorneys' fees. The record clearly supports the trial court's conclusion that defendants breached the implied warranty of habitability, however, and we remand to the trial court for reinstatement of such award.

The trial court is hereby

Affirmed in part, reversed in part, and remanded.

Judges McGEE and BIGGS concur.