Compass Tax Servs., LLC v. Karki, 2025 NCBC 35.

STATE OF NORTH CAROLINA

ORANGE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22CVS001021-670

COMPASS TAX SERVICES, LLC;
ASHOK LAMICHHANE; and AMAR
SHRESTHA,

        Plaintiffs,

v.

RABINDRA KARKI,

        Defendant.

**OPINION AND
FINAL JUDGMENT**

## I. INTRODUCTION

1. **THIS MATTER** came on for trial without a jury before the undersigned on 27 May 2025. (ECF No. 78.) The matter is now ripe for final determination.

2. This dispute arises out of Defendant and Counterclaim Plaintiff Rabindra Karki's (Karki) sale of five Liberty Tax franchise locations to Plaintiffs and Counterclaim Defendants Compass Tax Services, LLC (Compass Tax), Ashok Lamichhane (Lamichhane), and Amar Shrestha (Shrestha; and with Compass Tax and Lamichhane, Counterclaim Defendants).

3. Karki contends that the Counterclaim Defendants failed to fulfill their payment obligations under the operative sale agreement and that Lamichhane made material misrepresentations regarding his intent when entering into the operative sale agreement and breached his fiduciary duty as majority owner and manager of Compass Tax.

4.     Based on the following Findings of Fact and Conclusions of Law, the Court issues its Opinion and Final Judgment.

## II.     PROCEDURAL HISTORY

5.     Counterclaim Defendants initiated this action on 19 August 2022 by filing the Verified Complaint.  (ECF No. 4.)

6.     On 23 September 2022, this action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina, (ECF No. 1), and assigned to the undersigned, (ECF No. 2).

7.     Thereafter, on 16 February 2023, Counterclaim Defendants filed their Amended Complaint as a matter of right, asserting eleven claims for relief against Karki.  (*See generally* Am. Compl., ECF No. 20.)  Thereafter, they voluntarily dismissed nine of those eleven claims without prejudice.  (*See* ECF No. 31.)  As a result, Counterclaim Defendants maintained two claims against Karki for (1) breach of contract, (Am. Compl. ¶¶ 43–47); and (2) breach of the duty of good faith and fair dealing, (Am. Compl. ¶¶ 48–55).

8.     On 20 March 2023, Karki filed his Answer to the Amended Complaint and Amended Counterclaims in which he requested a jury trial.  (ECF No. 26.)  Karki asserted the following counterclaims against the Counterclaim Defendants: (1) breach of contract (Counterclaim One), (Countercl. ¶¶ 103–06); (2) fraud (Counterclaim Two), (Countercl. ¶¶ 107–14); (3) breach of fiduciary duty (Counterclaim Three), (Countercl. ¶¶ 115–20); (4) constructive fraud (Counterclaim Four), (Countercl. ¶¶ 121–26); and (5) violations of the North Carolina Unfair and

Deceptive Trade Practices Act (UDTPA), N.C.G.S. § 75-1.1 *et seq.*, (Counterclaim Five), (Countercl. ¶¶ 131–37).[1]

9.    After completion of discovery, on 17 October 2023, the parties filed cross-motions for summary judgment. (ECF Nos. 41, 45.) After briefing was complete, the Court held a hearing on the motions. (*See* ECF No. 56.) Following the hearing, the Court entered its Order and Opinion on Cross-Motions for Summary Judgment, (ECF No. 61), dismissing all of Counterclaim Defendants' claims and leaving only Karki's counterclaims for trial.

10.    On 2 July 2024, the Court originally set this matter for trial to begin on 4 February 2025 in Orange County, North Carolina. (ECF No. 62.) Thereafter, the parties withdrew their request for a jury trial. (ECF No. 69.)

11.    Following difficulties scheduling Nepalese interpreters for trial purposes, the Court cancelled the trial set for 4 February 2025, (ECF No. 73), and subsequently set trial for 27 May 2025, (ECF No. 78).

12.    Beginning on 27 May 2025, the parties, through their counsel, presented evidence to the Court at trial in the form of five live witnesses, stipulations of fact, various exhibits, and deposition testimony. Following conclusion of trial, on 3 July 2025, the parties submitted proposed findings of fact and conclusions of law. (ECF Nos. 81.1, 82.1.)

13.    All issues and claims are now ripe for resolution.

---

[1] Karki originally asserted a counterclaim for civil conspiracy, (Countercl. ¶¶ 127–130); however, he voluntarily dismissed that claim without prejudice on 22 November 2023, (*see* ECF No. 51).

### III. FINDINGS OF FACT

14.     Based on the evidence properly considered by the Court, the Court makes the following Findings of Fact. Any determination later stated as a conclusion of law that should have been stated as a finding of fact is incorporated into these Findings of Fact.

#### A.     **The Parties**

15.     Compass Tax is a North Carolina limited liability company with its principal office in Chapel Hill, North Carolina. Compass Tax was organized on 16 July 2021 and has three members—Lamichhane, Shrestha, and Karki. (*See* Karki's Ex. 103 at 5 [Op. Agt.].)

16.     Lamichhane is a citizen and resident of Orange County, North Carolina. Lamichhane holds a seventy-five percent interest in Compass Tax. (Op. Agt. 5.)

17.     Shrestha is a citizen and resident of Durham County, North Carolina. Shrestha holds a fifteen percent interest in Compass Tax, (Op. Agt. 5), and he is also employed full-time at Harris Teeter.

18.     Karki is a citizen and resident of Morrisville, North Carolina. Karki holds a ten percent interest in Compass Tax. (Op. Agt. 5.)

#### B.     **Beginning of the Parties' Relationship**

19.     For approximately twenty years, Karki has directly and indirectly owned tax preparation businesses in central North Carolina that operate as Liberty Tax franchises.

20. Each store had a store manager who was responsible for carrying out the work at each individual location. Mindy Hickerson, who has worked with Karki for many years and generally oversaw the operation of his tax preparation businesses, acted as the store manager in Raleigh. Ms. Hickerson was also the "general manager" for Karki's businesses in that she served as central administrator and addressed issues that arose in the day-to-day operations of the stores.

21. Karki's businesses included five tax preparation stores located at the following addresses (the Businesses):

    a.    3825 S. Roxboro Street #136, Durham, NC 27713;

    b.    247 Grande Heights Drive, Cary, NC 27513;

    c.    4456 Fayetteville Road, Raleigh, NC 27603;

    d.    501 Raleigh Road, Angier, NC 27501; and

    e.    3808 Guess Road, Durham, NC 27705.

22. Each of these five locations operated as a Liberty Tax franchise.

23. Lamichhane and Karki knew each other through a mutual friend in the Nepali community. In early 2021, Lamichhane was residing with his wife and family in New Jersey. Lamichhane and Karki became reacquainted and, during that time, the two began discussing the possibility of Lamichhane purchasing the Businesses from Karki.

24. During those discussions, Karki provided Lamichhane the gross sales figures for the Businesses between March and May 2021 by way of text message.

Lamichhane relied on only the financial information provided and shown to him by Karki in making his decision to pursue this opportunity.

25. Around the same time, Lamichhane informed Shrestha of the same opportunity, and Shrestha notified Lamichhane that, if Lamichhane purchased one or more of the Businesses, Shrestha wanted to join in.

26. In May 2021, a document was drafted by Lamichhane for the acquisition of the Businesses from Karki (the May Agreement). The May Agreement reflected a purchase price of $720,000.00 for the five Liberty Tax franchise locations owned by Karki. (*See* Karki's Ex. 101 [May Agt.].)

27. Shrestha and Karki met on 14 May 2021 without Lamichhane, who was at that time still living in New Jersey. However, the three men spoke on the phone while Shrestha and Karki signed the May Agreement. (May Agt. 4.) There is no evidence that Lamichhane ever signed the May Agreement.

28. The May Agreement also provided that a $15,000.00 deposit would be paid to Karki on the date the agreement was executed and that the deposit would be applied to the purchase price at closing. (May Agt. 1.) This payment was made to Karki on 14 May 2021 by a check written and delivered by Shrestha, and Karki deposited that check on 26 May 2021.

29. By July 2021, Lamichhane had moved to North Carolina from New Jersey and began advertising and operating the Businesses. On 30 July 2021, Lamichhane incorporated Compass Tax with the North Carolina Secretary of State, (Karki

Ex. 104), with the purpose of purchasing the Businesses from Karki and operating them.

### C.  The September Agreement and Conduct Related Thereto

30.  On 15 September 2021, Lamichhane invited Karki and Shrestha to his home for dinner.  After dinner, the three men discussed a new purchase and sale agreement related to the Businesses (the September Agreement).  (*See* Karki Ex. 102 [Sept. Agt.].)  This document, like the May Agreement, was drafted by Lamichhane using sources found on the internet.

31.  The preamble of the September Agreement states that "Compass Tax Services LLC (as represented by Ashok Lamichhane[,] Amar Shrestha[,] and Rabindra Karki[ ]) agrees to purchase [the Businesses] from Rabindra Karki[.]" (Sept. Agt. ¶ 1.)  Lamichhane, Shrestha, and Karki each signed the September Agreement on 15 September 2021.  (Sept. Agt. 4.)  Lamichhane and Shrestha signed in their individual capacities as the "buyers" and Karki signed in his individual capacity as the "seller."  (Sept. Agt. 4.)

### 1.  Purchase Price and Subsequent Payments

32.  The September Agreement represents that Karki, as a result of the sale, would receive $648,000.00, not the $720,000.00 as provided in the May Agreement, as follows:

> a) $15,000 paid on 5/15/2021 as initial deposit payment when signed the Contract for the Purchased [sic] and Sales of a Business was signed.
> a) [sic] Out of purchase price $179,400 shall be for operating and other the [sic] expenses and remaining shall be inventory, furniture and fixture and good will, of which $79,400 shall be paid in cash on 8/24/2021 and $100,000 will be paid in cash on 9/30/2021[.]

b) Remaining balance shall be paid as promissory note in 5 installments beginning 5/15/2022[.]

c) Compass Tax Services LLC shall pay interest of Bank prime loan plus 1 percent as of 5/10/2021 which is 3.25 + 1=4.25% Annual compound[.]

(Sept. Agt. ¶ 2.)  Lamichhane drafted the September Agreement in order to reflect that the $720,000.00 purchase price would be decreased from the amount contemplated in the May Agreement to $648,000.00, which would account for Karki's ten percent ownership interest in Compass Tax.

33.    In accordance with the terms of the September Agreement, the following payments were made to Karki: (1) the initial deposit of $15,000.00 on 14 May 2021 by check drawn on Shrestha's personal account; (2) a sum of $79,400.00 on 8 September 2021 by check drawn on Lamichhane's personal account; and (3) $35,000.00 of the $100,000.00 payment on 30 September 2021 made by Lamichhane and Shrestha.

34.    After all parties signed the September Agreement and payment was remitted to Karki pursuant thereto, Lamichhane brought to Karki's attention that he felt the purchase price was too high and attempted to negotiate a different price. Karki declined.

35.    As a result, Lamichhane asked for additional time to pay the remainder of the $100,000.00 payment, due on 30 September 2021, and Karki did not object. However, by December 2021, Karki made a demand upon Lamichhane to remit all amounts overdue.  Karki received no further payments.

### 2.    Management Fees to Lamichhane

36.    The September Agreement also contains a provision that provides:

> Lamichhane will be managing member of this entity and he shall be paid $500 for each franchise territory a month as Management fee for maintaining the day-to-day business for first year and $1000 for each franchise territory a month as Management fee for managing the day-to-day business for second year and $1500 for each franchise territory a month as Management fee for managing the day-to-day business for after 2nd year.

(Sept. Agt. ¶ 19.) At the same meeting where the parties signed the September Agreement, the parties signed the Operating Agreement for Compass Tax, which was also prepared by Lamichhane. (Op. Agt.) The Operating Agreement, in addition to the management fee provided for in the September Agreement, states that "[a]ny manager rendering services to the Company is entitled to compensation proportionate with the value of those services." (Op. Agt. ¶ 5.1.)

37. A checking account was set up for Compass Tax. The evidence shows that five checks for varying amounts, some exceeding $5,000.00, were written out from this account to Lamichhane for "management fees" or "cash," for a total of $61,700.00 being paid to Lamichhane for management services provided to the Businesses. (*See* Karki Exs. 114–18.) Lamichhane used one check for "cash" to pay a contractor for work done on his home.

### D. Management and Operation of Compass Tax

38. Compass Tax operated the Businesses from 15 September 2021 through the end of the 2022 tax season, or 15 April 2022. In addition to a business checking account, Compass Tax established a payroll account and a savings account with SunTrust Bank no later than 24 September 2021. (*See* ECF No. 79.)

39.     When payments were not made pursuant to the September Agreement, the business relationship between the parties deteriorated.

40.     Further, during the 2022 tax season, Lamichhane (1) changed the locks to the Businesses and did not provide Karki a key to the five locations, (2) prepared customer tax returns for his wife's New Jersey tax preparation company, Compass LLC, and (3) attempted to accept payment from customers on a credit card platform outside of the Liberty Tax franchise system.

## IV.     CONCLUSIONS OF LAW

41.     Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law.

42.     The Court has jurisdiction over the parties and the subject matter of this action.

43.     This case was properly designated as a mandatory complex business case and assigned to the undersigned, who has authority to make Findings of Fact following the completion of the trial and the submission of all disputed issues for resolution by the Court without a jury.

44.     The parties voluntarily and timely waived their right to a jury trial.

45.     The parties tendered twenty-seven exhibits, which the Court admitted into evidence for purposes of this bench trial.  The Court also received testimony by five witnesses appearing at trial: Karki, Lamichhane, Shrestha, Mindy Hickerson, and Elizabeth Suazo-Diaz.

46. Any Findings of Fact that are more appropriately deemed Conclusions of Law are incorporated by reference as the Court's Conclusions of Law.

### A. Counterclaim One: Breach of Contract

47. As an initial matter, the Court previously entered partial summary judgment as to Counterclaim One, holding that there was no genuine issue of material fact as to whether one or more of the Counterclaim Defendants failed to pay Karki the 15 May 2022 installment payment owed to Karki under the September Agreement. (Order & Op. Cross-Mots. Summ. J. ¶ 77, ECF No. 61 [O&O MSJ].)

48. However, the Court found there was a genuine issue of material fact as to which Counterclaim Defendant, or Counterclaim Defendants, were obligated to remit payment to Karki on 15 May 2022. (O&O MSJ ¶ 79.) In other words, while Karki contended that Lamichhane and Shrestha were each jointly and severally personally liable for the purchase price under the September Agreement, those Counterclaim Defendants contended that it was Compass Tax's obligation, and not their personal obligation, to make the purchase price payments called for under the September Agreement. As a result, this was an issue for which evidence was presented at trial and is now ripe for the Court's determination.

49. It is clear and undisputed based on the evidence presented that Lamichhane and Shrestha signed the September Agreement as the "buyers" and Karki signed as the "seller." The Court concludes that, as the signature line does not denote that Lamichhane and Shrestha signed the September Agreement in their

capacity as members of Compass Tax, they signed on behalf of themselves as individuals, separate from their affiliation with Compass Tax.

50.     Additionally, when payments were timely made to Karki pursuant to the September Agreement, Lamichhane and Shrestha paid the amounts using their personal checks—payments were not made from a Compass Tax bank account. There is no documentary evidence that Lamichhane and/or Shrestha made any statements, and there are no other documents evidencing, that these payments were made to Karki by Lamichhane and/or Shrestha in their capacity as members of Compass Tax. After the September Agreement was signed, Compass Tax was a functioning entity with an established bank account which could have provided funds to Karki pursuant to the September Agreement. Instead, Lamichhane and Shrestha used their personal funds to pay Karki, supporting the Court's conclusion that the individuals were the intended buyers under the September Agreement—not Compass Tax.

51.     Furthermore, the evidence demonstrates that, between the signing of the May Agreement and the September Agreement, Karki and Lamichhane discussed Karki reducing the purchase price of the five Businesses by the amount of $72,000.00 in return for receiving a ten percent membership interest in Compass Tax. Because the Court finds and concludes that the price reduction was, in fact, Karki's contribution to Compass Tax for his ten percent membership interest, the other two members—Lamichhane and Shrestha—would logically have to pay the remainder of the purchase price for their ninety percent combined interest in the entity.

52.     The Court, therefore, concludes, by the greater weight of the evidence, that Lamichhane and Shrestha—and not Compass Tax—are personally responsible under the September Agreement for the payment of the purchase price. As a result, Lamichhane and Shrestha are liable, jointly and severally, to Karki for breach of the September Agreement, and Karki is entitled to compensatory damages in the amount of $518,000.00, which represents the amount still owed to Karki pursuant to the September Agreement. *See Rufty v. Claywell, Powell & Co.*, 93 N.C. 306, 308–09 (1885) (explaining that liability for breach of contract may be joint, several, or joint and several).

## B.     Counterclaim Two: Fraud

53.     Karki's Counterclaim Two for Fraud has been narrowed during the pendency of this action, resulting in this claim being based on Karki's contention that Lamichhane's promises to pay Karki pursuant to the September Agreement were knowingly false and made with the intent to deceive Karki.

54.     The essential elements of a claim for fraud are a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007). Proof of a fraud claim requires proof of scienter, which requires "an intent to deceive, manipulate, or defraud." *RD & J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 745 (2004). "Additionally, reliance on alleged false representations must be reasonable." *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 26 (2003).

55. Karki has failed to demonstrate by the greater weight of the credible evidence that Lamichhane knowingly made false promises to Karki regarding his intent to make payments pursuant to the September Agreement at the time that agreement was signed. In fact, evidence presented by Karki supports the position that Lamichhane had every intention of paying, with Lamichhane paying Karki substantial sums of money, both before and after the September Agreement was signed. While the entire amount has not been paid to Karki, Lamichhane paid portions of the purchase price, evidencing his intent to honor his obligations under the September Agreement.

56. This does not relieve Lamichhane of his obligation to pay Karki pursuant to the September Agreement; however, the Court concludes that these payments evidence Lamichhane's intent to carry out his end of the September Agreement, which in turn causes Karki's claim for fraud to fail. The Court further finds and concludes that, based on the evidence presented, Karki has failed to demonstrate, by the greater weight of the evidence, that, at the time he signed the September Agreement, Lamichhane had no intention of satisfying his obligations thereunder.

57. Based on the foregoing, the Court concludes that Karki has failed to prove his claim for fraud and, therefore, Counterclaim Two is hereby dismissed with prejudice.

C. **Counterclaim Three: Breach of Fiduciary Duty**

58. Karki alleges that Lamichhane has breached his fiduciary duty owed to Karki as manager of Compass Tax by "using the [Businesses] and their associated

assets and resources" for his "own benefit and to the exclusion and detriment of Karki[.]" (Countercl. ¶ 118.)

59. To prevail on his claim for breach of fiduciary duty, Karki must show that: (1) Lamichhane owed Karki a fiduciary duty; (2) Lamichhane breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to Karki. *Farndale Co. v. Gibellini*, 176 N.C. App. 60, 68 (2006); *see also Miller v. Burlington Chem. Co.*, 2017 NCBC LEXIS 6, at *23 (N.C. Super. Ct. Jan. 27, 2017).

### 1. Existence of a Fiduciary Duty

60. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651 (2001).

61. As a general rule, members of an LLC do not owe a fiduciary duty to one another, but in some circumstances, "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016); *see also Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009). However, a majority interest does not necessarily equate to control. Because "an LLC is primarily a creature of contract," the members are generally free to arrange their relationship however they wish. *Crouse v. Mineo*, 189 N.C. App. 232, 237 (2008) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to 34-3 (rev. 7th ed. 2006)).

62. It is undisputed that Lamichhane held a majority interest in Compass Tax. (*See* Op. Agt. 5.) As to the Compass Tax Operating Agreement, Lamichhane was the

elected managing member of Compass Tax, allowing him powers that were not available to Karki and Shrestha, resulting in Lamichhane holding both managerial and majority control over Compass Tax. (*See* Op. Agt. § 4.3; *see also* Op. Agt. 6.)

63. Based on the evidence shown regarding the managerial control Lamichhane maintained over Compass Tax, (*see* Op. Agt. §§ 4.1, 4.3), paired with his majority interest in the company, (Op. Agt. 5), the Court concludes that Lamichhane owed a fiduciary duty to Karki—a minority member. *See, e.g.*, *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *17–18, 25 (N.C. Super. Ct. Oct. 21, 2016) (concluding that plaintiff sufficiently alleged existence of fiduciary duty by 55% majority member with "ultimate decision-making authority").[2]

### 2. Breach by Lamichhane of His Fiduciary Duties

64. There was ample evidence presented at trial which supports that Lamichhane breached his fiduciary duties owed as majority and managing member of Compass Tax, including: (1) the payment of "management fees" to himself in excess of the amounts contracted for without consent or notice of the other members of Compass Tax and without providing evidence as to the reasonableness of these fees; (2) the preparation of tax returns for his wife's tax preparation company during the 2022 tax season; and (3) the attempts to process credit card payments on a platform outside the Liberty Tax franchise system.

---

[2] While a number of this Court's decisions have concluded that majority membership plus managerial status doesn't necessarily create a de fact fiduciary status, (*see e.g. Wright v. Lorusso Ventures, LLC*, 2023 NCBC LEXIS 114, **15–16 (N.C. Super. Ct. Sept. 19, 2023), the particular facts of each case are important. Given Lamichhane's majority status, combined with his near total managerial control of the business, the Court concludes that, in this case, a fiduciary duty exists.

65. While the Court has determined that Lamichhane owed a fiduciary duty to Karki and that his conduct breached duties he owed as majority and managing member of Compass Tax, the Court next considers whether Lamichhane breached duties owed to Karki or duties owed to Compass Tax.

66. Karki contends that Lamichhane breached his duty owed to Karki individually by paying himself excessive "management fees," which Karki argues exceeds what was allowed under the September Agreement and the Operating Agreement. The checks show that Lamichhane paid himself varying amounts for his "management fee" as the manager of Compass Tax using funds from the Compass Tax bank account. As such, it is clear to the Court, and the Court concludes, that any harm suffered as a result of Lamichhane's actions is a harm suffered by Compass Tax—not Karki. Karki, however, has asserted his claim for breach of fiduciary duty as a direct claim against Lamichhane, not as a derivative claim on behalf of Compass Tax.

67. Likewise, the evidence presented as to Lamichhane's preparation of tax returns for his wife's company and the credit card processing outside the Liberty Tax franchise each constitute breaches of his fiduciary duty owed to Compass Tax—not Karki. The diversion of corporate funds and corporate opportunities are breaches which directly impact Compass Tax, and which only indirectly impact Karki as a minority member. If Karki felt Compass Tax was entitled to hold Lamichhane accountable for this behavior, he had the opportunity to bring derivative claims to

right this wrong. Instead, Karki chose to bring these claims directly against Lamichhane.

68. As a result, the Court concludes that, separate and apart from any alleged breaches of fiduciary duty, the injury alleged by Karki as to Lamichhane's conduct is injury proximately caused to Compass Tax—not Karki. As a result, Karki has suffered no individual injury and lacks standing to bring this direct claim for breach of fiduciary duty for a harm which Compass Tax has endured.

69. Based on the foregoing, the Court concludes that Karki has failed to prove his claim for breach of fiduciary duty and, therefore, Counterclaim Three is hereby dismissed without prejudice.

### D. Constructive Fraud

70. Karki alleges that Lamichhane breached his fiduciary obligations and took advantage of his position of trust to benefit himself by "using the [Businesses] and their associated assets and resources" for his "own benefit and to the exclusion and detriment of Karki[.]" (Countercl. ¶ 124.)

71. "To establish constructive fraud, a plaintiff must show that defendant (1) owes plaintiff a fiduciary duty; (2) breached this fiduciary duty; and (3) sought to benefit himself in the transaction." *Highland Paving Co.*, 227 N.C. App. at 42.

72. Having concluded that the alleged harm stemming from Lamichhane's breach of his fiduciary duties belongs to Compass Tax and not Karki, the Court concludes that Karki has failed to prove his claim for constructive fraud and, accordingly, Counterclaim Four for constructive fraud is dismissed without prejudice.

### E.  UDTPA

73.  Karki further alleges that "Lamichhane's fraud, breach of fiduciary duty, and constructive fraud . . . and Lamichhane's and Shrestha's other unfair and deceptive acts as alleged . . . are unfair and deceptive acts and practices in or affecting commerce in violation of N.C.[G.S.] § 75-1.1." (Countercl. ¶ 132.)

74.  To establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show, by the greater weight of the evidence, "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[ ]." *Highland Paving Co.*, 227 N.C. App. at 45.

> If a practice has the capacity or tendency to deceive, it is deceptive for the purposes of the statute. "Unfairness" is a broader concept than and includes the concept of "deception." A practice is unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

*Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 230 (2015).  "Whether a trade practice is unfair or deceptive depends upon the facts of each case and the impact the practice has in the marketplace." *Mitchell v. Linville*, 148 N.C. App. 71, 74 (2001) (quotation marks omitted).

75.  Having concluded that Karki has not succeeded in proving his claims for breach of fiduciary duty, constructive fraud, or fraud, the Court similarly concludes that those claims and the underlying conduct alleged do not constitute an unfair or deceptive act or practice in violation of N.C.G.S. § 75-1.1.

76.  The only remaining issue is whether Lamichhane's and Shrestha's conduct in negotiating and carrying out the September Agreement was unfair or

deceptive. "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [N.C.G.S.] § 75-1.1" absent a showing of "substantial aggravating circumstances attending the breach" of contract. *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). "Our case law establishes that '[s]imple breach of contract . . . do[es] not qualify as unfair or deceptive acts, but rather must be characterized by some type of egregious or aggravating circumstances before the statute applies.'" *Supplee*, 239 N.C. App. at 230 (alterations and omissions in original) (quoting *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 177 (1998)). Thus, "[a] violation of Chapter 75 is unlikely to occur during the course of contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties." *Mitchell*, 148 N.C. App. at 75.

77. The Court concludes that Lamichhane's and Shrestha's conduct as alleged and proven as to their breaches of the September Agreement, does not rise to the level of egregious or aggravating circumstances sufficient to warrant a finding that such conduct was unfair or deceptive within the meaning of N.C.G.S. § 75-1.1. The Court further finds and concludes that the misconduct alleged concerns intra-corporate actions and therefore is not "in or affecting" commerce. *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592–93 (1991) ("[A]n unfair or deceptive act or practice which is not between market participants, or that is not 'in or affecting commerce' is outside the scope of the UDTPA."); *see also Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at **15 (N.C. Super. Ct. Apr. 20, 2011).

78. Therefore, the Court concludes that Karki has failed to prove his claim for violations of the UDTPA and, accordingly, Counterclaim Five is hereby dismissed with prejudice.

## V. CONCLUSION

79. Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

a. On account of Counterclaim Defendants Ashok Lamichhane's and Amar Shrestha's breaches of the September Agreement, Karki is entitled to recover from Counterclaim Defendants Ashok Lamichhane and Amar Shrestha, jointly and severally, the remaining unpaid portion of the purchase price in the amount of $518,000, plus prejudgment interest at the legal rate from 15 May 2022 and post-judgment interest at the legal rate until the judgment is satisfied.

b. Karki shall have fourteen days from the entry of this Opinion and Final Judgment to submit to the Court a motion and supporting brief, and any related materials, seeking recovery of his costs in prosecuting this action against Lamichhane and Shrestha.

c. All parties shall bear their own attorneys' fees.

d. All other requested relief is **DENIED**.

80. Having resolved all claims, this Opinion and Final Judgment constitutes the Court's final judgment.

**SO ORDERED**, this the 23rd day of July, 2025.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Chief Business Court Judge